HANNAH SIMONSON v. MINNEAPOLIS & ST. LOUIS RAILROAD
COMPANY.[1]

December 12, 1902.

Nos. 13,293—(176).

### Personal Injury—Remote Damages.

In a personal injury action by a married woman it is *held*, upon a
consideration of the evidence, that damages on account of the mal-
presentation and death of her child at its birth fifteen months after the
negligent act of the defendant are too remote and conjectural, and no
recovery can be had therefor.

Action in the district court for Freeborn county to recover
$15,000 for personal injuries sustained by plaintiff, a passenger
on defendant's railway train, as the result of being wrongfully
carried beyond her destination. The case was tried before Kings-
ley, J., and a jury, which rendered a verdict in favor of plaintiff
for $1,550. From an order granting a motion for a new trial,
plaintiff appealed. Affirmed.

*H. H. Dunn* and *Morgan & Meighen,* for appellant.

*Albert E. Clarke,* for respondent.

START, C. J.

The plaintiff, a married woman, about thirty-two years of age,
was, on the night of November 30, 1900, a passenger on the de-
fendant's railway train from Albert Lea, this state, to Norman,
Iowa, a station one mile south of her home, the village of Emmons,
this state. The conductor knew that she was to leave the train at
Norman, but ran his train past that station some four miles, when
the plaintiff and her traveling companion, Mrs. Guthier, were dis-
charged from the train, and they were compelled to walk back to
Norman and to their homes, a distance of some four or five miles,
where they arrived about three o'clock on the morning of Decem-
ber 1. The plaintiff, by reason of the fright, exposure, and hard-
ship incident to her walk, was made nervous, and her health was
seriously impaired. She brought this action to recover the dam-

[1] Reported in 92 N. W. 459.

ages sustained by her by reason of such wrongful act of the defendant. The leading facts of this case, except as hereinafter stated, are substantially the same as those stated in the opinion in the case of Guthier v. Minneapolis & St. L. R. Co., 87 Minn. 355, 91 N. W. 1096, and need not be here repeated. A trial of the action resulted in a verdict for the plaintiff in the sum of $1,550. The trial court made its order, on motion of the defendant, granting a new trial, from which the plaintiff appealed.

In the month of June following the wrongful act of the defendant, the plaintiff discovered that she was pregnant, and fifteen months after such act, and on the last day of February, 1902, she was delivered of a dead child. The evidence is practically conclusive that it was not a case of premature birth or miscarriage, and the trial court rightly so instructed the jury. The evidence, however, is undisputed that there was a malpresentation of the child. There were slight indications that the child was alive when the attending physician attempted to relieve the situation, but it was dead when the artificial delivery was completed. The plaintiff had previously given birth to three children without any unusual difficulties. On the trial it was claimed on behalf of the plaintiff that this malpresentation and the resulting consequences to her were due to the injuries she received by reason of her midnight walk, which she was compelled to take by reason of the act of the defendant. The trial court instructed the jury that, if they found that the malpresentation was the result of such walk, they should award her such damages as would fairly compensate her for this particular injury, with such other compensation as they believed from the evidence she was justly entitled to. The motion for a new trial was granted on the sole ground that the court was of the opinion that it was error to submit to the jury the matter of the malpresentation as an element of damage. This presents the only question for our consideration.

It would seem to the average man, not deeply read in medical and surgical lore, that it was a far cry from the act of the defendant in discharging the plaintiff from its train to the malpresentation of her child fifteen months thereafter. Nevertheless, if such result followed in unbroken sequence from the wrongful act of the

defendant, it is liable to the plaintiff for the consequences to her of such malpresentation, although it could not, at the time the act was committed, have been reasonably anticipated that injury would result to her in the form or way in which it did happen. Christianson v. Chicago, St. P. M. & O. Ry. Co., 67 Minn. 94, 69 N. W. 640; Keegan v. Minneapolis & St. L. R. Co., 76 Minn. 90, 78 N. W. 965. If the plaintiff had been pregnant at the time when the defendant's wrongful act was committed, and a miscarriage followed as the direct result thereof, she would have been entitled to recover damages therefor; but not for the loss of the child. Proof of pregnancy and subsequent miscarriage resulting from the wrongful act are allowed in such cases as an element of damages on the same principle that damages are allowed for the aggravation of an existing disease, or other physical condition, by the defendant's negligent act. Pregnancy at the time the party is injured being an existing physical condition, if miscarriage follows as the result of the negligent act, it is a part of the personal injuries sustained by reason of such act. Watson, Per. Inj. §§ 197-199; Shartle v. City of Minneapolis, 17 Minn. 284 (308).

In the case cited the plaintiff's wife was pregnant, and was injured by falling from a bridge which the city had negligently permitted to fall into disrepair. She was subsequently delivered of a dead child, caused, as the testimony showed, wholly by the fall of the mother from the bridge, and it was held that evidence of this fact was properly received on the question of damages. But in this case the plaintiff's physical condition was not that of pregnancy, and, except for her subsequent pregnancy, due to an absolutely independent cause, there could have been no malpresentation of her child. The rule, if a person is so injured by the wrongful act of another as to render his system more liable to contract, or less able to resist disease, which ensues, the consequences thereof are held to follow proximately from such act, has no application to this case, for the obvious reason that pregnancy is not a disease within the meaning of the rule.

While we are not prepared to hold that in no case can a married woman, who is injured by the negligent act of another, and thereafter becomes pregnant, and a miscarriage follows by reason of

the pregnancy and the negligent act, recover from the person committing the act damages for the miscarriage, yet we do hold that upon the record in this case the plaintiff was not entitled to include in her estimate of damages anything on account of the consequences to her of the malpresentation of her child at the time of the delivery thereof. The burden was upon the plaintiff to establish the fact that the malpresentation of her child resulted proximately from the act of the defendant,—that, but for such act, the malpresentation would not have occurred. Orth v. St. Paul, M. & M. Ry. Co., 47 Minn. 384, 50 N. W. 363; Briggs v. Minneapolis St. Ry. Co., 52 Minn. 36, 53 N. W. 1019; Minneapolis S. & D. Co. v. Great Northern Ry. Co., 83 Minn. 370, 86 N. W. 451.

Now, the evidence in this case affords a basis for no more than a mere guess that the particular injury here complained of resulted proximately or otherwise from the act of the defendant. Two physicians were called on behalf of the plaintiff to give opinion evidence as to the cause of the malpresentation. One of them, in answer to a hypothetical question, which assumed, with other facts, that the plaintiff suffered a premature birth of a still-born child, said,

"I should attribute the condition in the particular case to the trouble she received from the walk."

The malpresentation of the child—the actual difficulty—was not one of the facts included in the question, and the physician expressed no opinion as to its cause, unless he intended to include it in his answer to the question. The other physician answered a similar question as follows:

"That is a very difficult question to answer without a good deal of explanation. With all of those assumptions, as it reads, I should say that it was due to the exposure, physical exertion, and fright which the testimony shows took place on the night of December 1, 1900." He also gave the following testimony:

"Q. And what is the fact, doctor, from a medical standpoint, as to the likelihood of a malpresentation resulting from the premature birth more than in a proper presentation? A. The smaller the foetus when the pains come, the more likely is the malpresentation. Q. Then it is more likely to result from premature birth

than in the case of a fully developed child? Yes, sir. * * * I think the malpresentations are more likely to be found in those who are below par in health for some reasons, but I want to say they are very often found in those who are perfectly healthy. * * * Q. Doctor, I wish you would explain, as a medical man, some of the reasons why you arrived at the conclusion that the condition of the plaintiff, as you have stated, was attributable to the walk which she took. Give your reasons to the jury. * * * A. The hypothetical question assumes that the patient was well up to that date under consideration, and that she has not been well since; that is to say, she has been in this nervous condition since. I assume that the neurasthenic condition brought on at that time continued at the time of the pregnancy. She ought not to have become pregnant, but, becoming pregnant in that neurotic condition, the pregnancy aggravated the condition, and combining the two conditions was the cause of her trouble during pregnancy, or the probable cause of the trouble during pregnancy and during her confinement."

It is patent from his statement that malpresentation was more likely to result from premature birth than in the case of a fully developed child, that the unwarranted assumption in the hypothetical question that the plaintiff suffered from "a premature birth of a still-born child" was an important factor in determining his answer.

Three physicians called by the defendant gave it as their opinion that the malpresentation was not the result of the walk, and, further, that the causes of malpresentation, so far as any accurate knowledge goes, are unknown. This conclusion is supported by the undisputed facts in this case that malpresentations are very often found in women who are perfectly healthy. It follows that it was error for the trial court to submit the claim of the plaintiff for damages on account of the malpresentation of her child, and that the court was right in granting a new trial.

Order affirmed.