PFISTER & VOGEL LEATHER COMPANY, Appellant, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*October 13—November 8, 1927.*

*Workmen's compensation: Disease contracted because of employment: Findings based on preponderance of probabilities.*

1. Where the proof as to the cause of an employee's disability or death from disease does not pass beyond the stage of possibilities or probabilities because no one can testify positively as to the source from which the germ causing the disease has come, the industrial commission or the court may base its findings on a preponderance of probabilities or of the inferences that may be drawn from established facts. p. 134.

2. It is the province of the industrial commission to draw inferences from evidentiary facts, and in the field of inferences from such facts its action is final unless there is an entire failure of evidence to support the findings. p. 135.

3. The evidence in this case is *held* to warrant a finding of the commission that an employee's death from infection of the liver by the actinomycosis germ or fungus, which produces the disease commonly called lumpy jaw when it affects cattle, was contracted by the employee in his employment in a tannery. p. 135.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge. *Affirmed.*

Action by the *Pfister & Vogel Leather Company* to set aside a death benefit awarded to *Helen Gawlik* by the *Industrial Commission.* From a judgment affirming the award the *Pfister & Vogel Leather Company* appeals.

Leon Gawlik had been continuously employed in tanneries for twenty-seven years before his death. He had spent the last seven or eight years of his life in the tannery of the appellant company. His death was caused by an infection of the liver by the actinomycosis germ or fungus, which is the germ which produces the disease commonly called lumpy jaw when it affects cattle.

Deceased worked in a large room in which hides were first handled when the process of tanning began. The hides passed through several processes for the purpose of softening them and removing any flesh that might remain upon them. They were then immersed in a saturated lime solution or in a solution of sodium sulphide. After the hides came from these solutions they were handled by the deceased, who passed them through machines for the purpose of removing any flesh remaining on the hides. If there was any flesh that was not removed by these machines, it was trimmed off by the deceased by the use of a knife.

The *Commission* found that the death was caused by a disease contracted because of his occupation and employment with the *Pfister & Vogel Leather Company.* The circuit court confirmed the award.

For the appellant there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles.*

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, concurred in and adopted by *Kleczka & Kleczka* of Milwaukee, attorneys for respondent *Gawlik;*

and the cause was argued orally by *Mr. Levitan* and *Mr. Leonard J. Kleczka.*

STEVENS, J.   The single question presented is whether there is any credible evidence which directly or by fair inference sustains the findings of the *Industrial Commission.* This depends largely upon the testimony of the three physicians who testified.   As is usually the case when doctors are called by opposing parties, they do not agree.   Yet there is substantial accord in their testimony as to the fundamental facts involved.   The difference in their testimony consists chiefly in the degree of certainty with which they testify to the basic facts which determine liability.

The doctors all agreed that the actinomycosis germ or fungus does pass by direct contact from animal to animal, if there is a portal of entry.   They also agree that the germ does not die with the death of the animal, and that it might be alive, imbedded in the hide when it reached the tannery.   They also agree that the germ could pass from the hides to the hands of the man handling the hides and then to the mouth and thus be introduced into the human system.   The doctors agree that biologically there is no characteristic difference between the actinomycosis germ found in animals and in man.   They further agree that the germ could pass through the air and enter the human system through the mouth or nose.   The doctors all agreed that there is at least a possibility that the deceased was infected with the germ from hides handled in the tannery. The physicians called by the applicant testified that it was more probable that the disease was contracted in the tannery than anywhere else, and that the probabilities are all to the effect that the deceased was infected with the germ in the tannery.

It is often impossible to find the source from which a germ causing disease has come.   The germ leaves no trail

that can be followed.    Proof often does not pass beyond
the stage of possibilities or probabilities, because no one
can testify positively to the source from which the germ
came, as can be done in the case of physical facts which
may be observed and concerning which witnesses can acquire
positive knowledge.    Under such circumstances the *Indus-
trial Commission* or the court can base its findings upon a
preponderance of probabilities or of the inferences that may
be drawn from established facts.    *Vilter Mfg. Co. v. Indus-
trial Comm.* 192 Wis. 362, 365, 366, 212 N. W. 641.

The evidence presents at least three methods by which
the germ, if contained in the hides, might have been com-
municated to the deceased: *First,* by being carried through
the air.    *Second,* by being carried on the hands or clothing
of the man who handled the hides and then communicated
to the deceased by personal contact in the tannery or at
lunch time when they all ate in a common rest room.    *Third,*
by direct contact with the germ when the deceased was trim-
ming the flesh from the hides.

The lime and the sodium sulphide solutions would have
destroyed the germs as well as the hides themselves if the
hides had been left in the solutions a sufficient length of
time.    But the very purpose of the tanning process required
that the hides be taken out of these solutions before the
hide had been injured.    The proof shows that nature walls
off—encapsules—such germs as the one here in question in
an attempt to protect the system from its ravages.    Unless
the hide was left in the solutions long enough to destroy
these encapsuled germs, the germ might still be alive when
the hides were trimmed by the deceased, at which time there
would be opportunity for the direct contact with the germ
which is essential to pass it to the human system.    Even
if the germs were all destroyed in the solutions, there still
remains the possibility of direct contact either through the
air or through the hands or the clothing of the men who
handled the hides before they were placed in the solutions.

We have reviewed the evidence thus at length to show that it contains substantial credible evidence to support the findings of the *Commission,*—that there is not an entire failure of proof to support the findings. "It is the province of the *Industrial Commission* to draw inferences from evidentiary facts, and in the field of inferences from such facts its action is final unless it appears that there is entire failure of evidence to support the findings." *Scott & Howe L. Co. v. Industrial Comm.* 184 Wis. 276, 278, 199 N. W. 159.

The proof established the fact that death was caused by an infection of the actinomycosis germ or fungus. It follows that deceased must have been exposed to this germ at some place. The inferences preponderate in favor of the finding that he was exposed to this germ in appellant's tannery. The preponderance of inferences is so great that the *Commission* could say that it amounted to a reasonable certainty.

*By the Court.*—Judgment affirmed, with costs.