HAFEMANN, Administrator, Appellant, vs. SEYMER, Respondent.

*April 4—May 8, 1928.*

*Physicians: Actions for malpractice: Failure to guard against infection: Question for jury: Admissions indicating guilt.*

1. In an action for the death of a wife caused by the malpractice of the defendant physician, the question of the negligence of the physician in performing an operation on the wife without sterilizing his hands or his instruments, resulting in blood poisoning, is *held,* under the evidence, for the jury. p. 628.
2. Conflicting testimony as to whether death was caused by bacteria introduced into the body of the deceased through the negligence of the physician or by germs native in the deceased made the question one for the jury. p. 631.
3. An admission by the physician that he was to blame for the death of plaintiff's wife and that he felt so bad about it that he bought a revolver and wanted to kill himself, if made by him, was a strong indication as to his negligence causing the infection. p. 631.

APPEAL from a judgment of the circuit court for Milwaukee county: EDGAR V. WERNER, Judge. *Reversed, with directions.*

Action begun May 27, 1921. Judgment entered November 26, 1927.

Malpractice. The action out of which this appeal arose was before this court on appeal from an order of the lower court, Circuit Judge WALTER SCHINZ presiding, who sustained demurrers of the defendant to all but the third and sixth causes of action set forth in the complaint. *Hafemann v. Seymer,* 191 Wis. 174, 210 N. W. 373.

The complaint, by appropriate allegations, charges that the defendant, a physician and surgeon, negligently and carelessly prescribed and caused to be administered to the wife of the plaintiff certain drugs and medicines, and carelessly and negligently performed an operation upon the wife of the plaintiff, who was his patient; that she died by reason thereof.

The answer admits the treatment of the wife by defendant and her death, but denies any negligence in such treatment.

The trial was by the court and a jury. A special verdict was rendered, to wit:

"Did the defendant, *Dr. Seymer,* fail to exercise ordinary care:

"(1) By failure to sterilize the instruments used by him at the time and place in question? *A.* Yes.

"(2) By failure to sterilize his hands in performing the operation? *A.* Yes.

"(3) By failure to use sterile gauze in the operation? *A.* Yes.

"(4) If you answer questions numbered 1, 2, and 3 'No,' you need not answer question No. 4. If you answer questions numbered 1, 2, and 3 or any or either of them 'Yes,' then answer question No. 4: Was such failure a proximate cause of the death of Hattie Hafemann? *A.* Yes.

"(5) In the event that the estate of Hattie Hafemann should be entitled to recover, at what sum do you assess her damages for pain and suffering? *A.* $1,000.

"(6) In the event that the plaintiff, *Ben Hafemann,* should be entitled to recover, at what sum do you assess his damages? *A.* $3,000."

Thereafter the plaintiff moved for judgment on the verdict, and defendant moved, among other things, to change the answer to the fourth question from "Yes" to "No." Defendant's said motion was granted and judgment was thereupon entered dismissing the complaint on its merits. Plaintiff appeals.

Plaintiff assigns as errors: The court erred in changing the answer to the fourth question; in ordering judgment for defendant on the special verdict so changed; and in denying plaintiff's motion for judgment on the verdict as returned by the jury. Other errors assigned are not necessary to a consideration of the case.

For the appellant there was a brief by *McGovern, Lyons, Curtis, Devos & Reiss* of Milwaukee, and oral argument by *F. E. McGovern.*

For the respondent there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles.*

CROWNHART, J . Plaintiff's wife went to the office of the defendant, who was a physician and surgeon duly licensed to practice in this state, for treatment. She apparently was suffering from a cold in her chest. The doctor gave her a prescription, which she had filled and used as prescribed. This first visit was on February 19, 1921. The plaintiff was with his wife at the time of this visit. February 21st plaintiff called defendant and reported that his wife's pains were about the same, and the doctor responded by a visit to his patient at her home. He made no physical examination of the patient that day, but gave her a box of pills to be taken, which she took as directed. February 24th plaintiff again called the defendant and told him his wife was getting worse. The patient was confined to her bed for the first time. The defendant responded by a visit at the home, and then made a physical examination of the uterus, using a speculum for the purpose. He then used a tenaculum to grasp the lip or cervix of the uterus to pull it out and hold it, and then with a dressing forceps he packed the uterus with gauze. The patient was pregnant for something more than a month. The packing was expelled by natural contraction of the uterus later the same day. The patient grew worse and defendant was called again on the 25th of February. He examined his patient and prescribed medicine which plaintiff procured and gave to his wife as directed. The patient continued to grow worse, and the doctor was called again on February 26th. He took his patient's temperature, pronounced her condition favorable, and said she should continue to take the medicine he had previously prescribed. February 27th the doctor was again called to the bedside, and diagnosed the ailment then as blood poisoning. The

defendant again visited his patient on the 28th, and had Dr. Thomas with him in consultation. The patient continued to grow worse until March 2d, when she died from blood poisoning resulting from streptococci infection introduced into her system through the operation performed by packing the uterus.

The foregoing facts are substantially conceded. The issues involved were the negligence of the defendant, charged to the defendant at the operation, claimed to have resulted in the infection causing death of plaintiff's wife.

It is not seriously contended that the evidence is insufficient to support the verdict of the jury as to the negligence of the defendant in performing the operation upon the deceased. The trial court sustained the verdict of the jury in that regard, and from a careful examination of the evidence we think defendant's negligence was clearly a jury question.

The question here, then, turns directly as to whether such negligence was the proximate cause of the infection. That deceased died from streptococci infection is conceded.

Dr. Warfield, on behalf of the defendant, testified that in one third of the women the vagina contains streptococci bacteria, and from this it is contended by the defendant that it is impossible to determine whether the infection was introduced into the deceased's system through the negligence of the defendant or whether it came from the germs already present in the vagina unaffected by defendant's negligence.

It must be conceded that the question is not free from difficulty. It may be admitted that it cannot be answered with absolute certainty. The difficulty of tracing bacterial infection has been stressed by this court in some recent cases. In *Koehler v. Waukesha Milk Co.* 190 Wis. 52, 208 N. W. 901, the deceased cut her finger on a defective milk bottle and she died from infection. It was there contended that the source of the infection might as well be attributed to some other

cause than the milk bottle. There was no proof that the bottle was contaminated by the infection germs. The court, responding to such contention, said:

"We are unable to say as a matter of law that there was shown any independent agency intervening the cut on the finger caused when Mrs. Koehler picked up the milk bottle and the subsequent discovery of the existence of the septicemia, so that as a matter of law it could be said that the infection occurred at some other time than when the cut was first made and entry of bacteria, if such were there, into the wound from the bottle, became possible, and so as to bring the situation here within the qualification to the rule above stated as to an intervening cause. Manifestly no direct evidence could be produced as to just when the infection invaded her system, but that it did is undeniable; and it was a proper exercise of a jury's judgment, under all the facts, to determine as far as humanly possible whether such occurred by and through defendant's negligence or from some intervening act. Under the evidence, both the source of infection and the cut in the finger can be as well or more properly attributable to defendant's negligence than to any other possible or suggested source, and it cannot be said that there is such an element of speculation or surmise on the part of the jury as should prevent their determination in this regard from being upheld."

In *Vilter Mfg. Co. v. Industrial Comm.* 192 Wis. 362, 365, 212 N. W. 641, the question arose as to where the party contracted smallpox, and the contention was made there, as here, that the evidence did not establish the fact to a reasonable certainty. Answering the contention, Mr. Chief Justice VINJE said:

"The ultimate question we have to answer is, Can a finding rest upon a preponderance of probabilities? The assertion is made by plaintiffs that the finding is only a guess and that it must amount to a reasonable certainty. That a finding or verdict must amount to a reasonable certainty is the law. That brings us to the question stated somewhat differently, Can a finding to a reasonable certainty be based

upon evidence which shows only a preponderance of probabilities? Fortunately our court has dealt with this question several times. In *Hallum v. Omro*, 122 Wis. 337, 99 N. W. 1051, the court says: 'True there can be no recovery, legitimately, for permanent impairment in a case like this' (action for personal injury) 'in the absence of competent evidence warranting a conclusion, with reasonable certainty, that such impairment will exist as a result of the accident; but it is not necessary that opinion evidence should be confined to that high degree of certainty. Experts may properly testify to the mere probabilities of the case.' "

In the case of *Pfister & Vogel L. Co. v. Industrial Comm.* 194 Wis. 131, 215 N. W. 815, this court said:

"It is often impossible to find the source from which a germ causing disease has come. The germ leaves no trail that can be followed. Proof often does not pass beyond the stage of possibilities or probabilities, because no one can testify positively to the source from which the germ came, as can be done in the case of physical facts which may be observed, and concerning which witnesses can acquire positive knowledge. Under such circumstances the industrial commission or the court can base its findings upon a preponderance of probabilities or of the inferences that may be drawn from established facts."

In line with these decisions and many others unnecessary to cite, we must hold that the jury was at liberty to find the proximate cause of the infection to a reasonable certainty from the reasonable probabilities inferred from the evidence. Dr. Tharinger, a competent expert, testified, basing his testimony on the facts in a hypothetical question, that it is probable that the foreign germs are the ones that caused the infection; therefore it is not probable that the native germs did. In other words, the doctor contended that the bacteria introduced through the negligence of the defendant did the mischief, and not the germs that may have been native in the vagina of deceased. This testimony was contradicted

by Drs. Warfield and Thomas, who said it was impossible to say definitely where the infection came from. But that only made a jury question. We the more readily sustain the jury verdict by reason of the admissions of the defendant, testified to by the plaintiff and Mr. Weinbrenner, a prominent business man of Milwaukee. Mr. Weinbrenner testified that he went with the plaintiff to defendant's office, and that during the conversation the defendant made the statement "that he was to blame for the death of Mrs. Hafemann, and that he felt so bad about it he bought a revolver and wanted to blow his brains out. He had the revolver out of the drawer of his desk and exhibited it." The plaintiff testified to the same effect. The defendant's version of this conversation denies that he admitted he was to blame, but he thought he may have said he felt so bad that he got the gun and was going to kill himself. Here, again, the jury had a right to believe the plaintiff and his witness, and if the defendant made the admission as claimed by plaintiff, it was a strong indication as to his negligence causing the infection. The defendant was himself a qualified expert, and by reason of his first-hand knowledge of what happened could draw the most probable inferences therefrom.

There is no dispute as to the port of entry of the infection. The instrument used to draw out the neck of the uterus for the operation made several pin pricks in the cervix, which were found by the post-mortem to have been congested. The expulsion of the packing from the uterus resulted in lacerations. Either of these conditions prepared a way for the germs to enter the system, and they undoubtedly did so enter.

The defense relies upon *Matuschka v. Murphy,* 173 Wis. 484, 180 N. W. 821. Our review of the evidence discloses that the doctrine of that case is not applicable here. The doctrine of that case is probably best stated in *Hyer v. Janes-*

*ville,* 101 Wis. 371, at p. 377 (77 N. W. 729), where the court said: ·

"Where there is no direct evidence of how an accident occurred, and the circumstances are clearly as consistent with the theory that it may be ascribed to a cause not actionable as to a cause that is actionable, it is not within the proper province of a jury to guess where the truth lies and make that the foundation for a verdict."

In the *Matuschka Case, supra,* the court held that the circumstances presented just such a situation, and our present consideration of the case confirms that view. ·

The evidence here does not present such a situation, in our judgment. The evidence shows a possibility that the infection might have come from the germs resident in the vagina. The reasonable inference to be drawn from the evidence, however, greatly preponderates in favor of the conclusion that the infection came from the germs introduced by the unsterile hands and instruments of the defendant. The reasonable inferences to be drawn from the evidence do not balance. While a mere possibility exists that the infection might have come from the resident germs, it is far more probable that they were introduced by the defendant. This does not present a situation where the jury can do no more than guess or conjecture.

It seems clearly within the reasonable probabilities that the operation would have been safely performed if the defendant had used the precautions against infection demanded by good surgical practice. The deceased was a strong, healthy woman of thirty-five. She had three miscarriages over several years prior to this, without serious results, and, so far as known, without infection following. Here, however, we have an unusual result from the operation. The testimony discloses, with sufficient certainty to sustain the verdict, that the defendant did not use the care and caution against infection required by good surgical practice, and we think the inference reasonably followed that the infection was introduced as a proximate result of such negligence.

It follows from what we have said that the trial court was in error in changing the verdict of the jury.

*By the Court.*—The judgment of the circuit court is reversed, and the court is directed to reinstate the answer of the jury to the fourth question in the verdict, and to enter judgment in favor of the plaintiff upon such verdict.