SCHWARTZ, Appellant, vs. ZELLMER, Respondent.

*November 9—December 6, 1932.*

For the appellant the cause was submitted on the briefs of *Bird, Smith, Okoneski & Puchner* of Wausau and *Vernon J. McHale* of Antigo.

For the respondent there was a brief by *Lines, Spooner & Quarles* of Milwaukee and *Earl J. Plantz* of Antigo, attorneys, and *Chas. B. Quarles* of Milwaukee of counsel, and oral argument by *Mr. Quarles*.

WICKHEM, J. The sole question in this case is whether there was evidence from which a jury could find negligence on the part of the defendant with respect to his diagnosis and treatment of plaintiff's injuries. On December 3, 1930, plaintiff had a severe injury to his arm and wrist, as a result of being thrown from an overturned automobile. He went to defendant's office in Antigo about an hour after the accident. The defendant found a dislocated wrist and a lacerated back of the hand extending through the tendons but not to the bone. The ligaments of the wrist were torn but not the tendons. Defendant treated the lacerations on the hand, administered anti-tetanus serum, and, after reducing the dislocation, put the arm in an aluminum Walker splint. This is a splint made to fit the lower portion of the hand and the forearm. The splint used did not extend to the elbow, although it did reach sufficiently far to include the portion of the arm which was later discovered to be fractured. On the day after the first treatment defendant took an X-ray. The plate did not turn out well, was not sufficient to disclose the fractured radius, and in fact was not taken for that purpose. Two days after the accident and

after the preliminary treatment and X-ray, plaintiff claims that he called defendant's attention to a scraping of the bones, and that the defendant assured him that there were no bones broken. On the 12th of January the defendant sent the plaintiff back to work. The plaintiff, continuing to have trouble, returned to the defendant, and on January 27th defendant took a second X-ray, which revealed the fact that the radius was fractured. It is the testimony of the defendant that the X-ray on January 27th showed a union of bones but not in a straight line, although defendant claims that the arm was then a serviceable arm. It was resolved to perform an open reduction, which means that the surgeon cuts into the arm and fastens the bones together. This operation was performed on February 11th. Defendant claims that at that time there was definite bony union, but that the radius was bowed with the lower end pointing inward. The bone was chiseled apart, reset, and fastened with kangaroo tendons. These, however, did not hold the bones together, and on February 19th an X-ray showed them entirely separated. After the open reduction the defendant put on a splint which extended above the elbow. The union which has ultimately taken place leaves the radius so crooked as to make permanent the dislocation of the wrist, and to result in an impaired arm.

Negligence is claimed in two respects: (1) failure to use the X-ray to make a timely diagnosis of the fracture, and (2) failure to properly immobilize the arm. There is expert testimony to the effect that the X-ray is the usual and customary method adopted by physicians in the vicinity to diagnose a fracture and to check the progress of the healing, in order to ascertain whether there is a proper union of the bones and to remedy the situation if there is not. The defendant had an X-ray and fluoroscope in his office. We think the jury were entitled to believe that good practice and a proper discharge of his obligation as a physician required a more frequent and timely use of the X-ray than was made

in this case by defendant. *Kosak v. Boyce,* 185 Wis. 513, 201 N. W. 757. There is evidence from which a jury could conclude that there was no discovery of this fracture until January 27th, although the attention of defendant was called both to plaintiff's difficulty in using the arm and to the grating noise which plaintiff claims to have noticed. The jury were further entitled to conclude that there was no reasonable effort directed to the discovery of the fracture up to this time. There is evidence to the effect that it was usual and customary to immobilize the arm at the elbow and at the wrist in cases of a fracture of the radius, and that the splint employed by defendant was not long enough to accomplish this result. It is significant that after the open reduction the arm was so immobilized by the defendant. We think there is sufficient evidence to go to the jury on the question of defendant's negligent diagnosis and treatment. There is nothing in this conclusion contrary to the doctrine of *DeBruine v. Voskuil,* 168 Wis. 104, 169 N. W. 288, and *Kosak v. Boyce, supra.* The liability in this case cannot be predicated, and is not sought to be predicated, upon the fact that other physicians, in the exercise of their judgment, would have acted differently than did the defendant. It is based upon evidence disclosing, or at least open to the conclusion or inference, that defendant did not adopt the methods of diagnosis and treatment that were customary and accepted in the vicinity where he practiced. To one class of testimony the doctrine of the cases above cited does apply. Plaintiff contended that defendant should have used a plaster cast rather than an aluminum splint. The evidence on this point discloses a difference of opinion among the physicians who testified as to which type of splint could be used to the greatest advantage, in view of the lacerated hand, but the evidence is without dispute that plaster casts and steel and leather splints are in general use by physicians and surgeons. Under these circumstances it cannot be said that the fact that some of the experts would have used a plaster cast,

gives rise to an inference of negligence because the defendant used an aluminum splint.

The next question is whether or not there is any proof of damage to plaintiff resulting from the failure properly to diagnose and treat the fracture. There is evidence to the effect that the quicker a fracture is discovered and dealt with, the better the results usually obtained. The evidence is that good results ordinarily follow proper treatment. There is evidence here of negligent diagnosis and treatment, and of a result consistent with such diagnosis and treatment. While there is evidence that open reductions are often necessary, and that angulation and bowing of the bones may sometimes result in the absence of negligence, we do not think this leaves the question of causation in the state where the jury would be required to guess or speculate. The question presented is that stated by Mr. Chief Justice VINJE in *Vilter Mfg. Co. v. Industrial Comm.* 192 Wis. 362, 212 N. W. 641: "Can a finding rest upon a preponderance of probabilities?" It was held that it could, citing *Hallum v. Omro,* 122 Wis. 337, 99 N. W. 1051. This case was followed by *Pfister & Vogel L. Co. v. Industrial Comm.* 194 Wis. 131, 215 N. W. 815, and *Hafemann v. Seymer,* 195 Wis. 625, 219 N. W. 375.

The question presented by an attack upon the finding of a court or jury is the same as that involved where the propriety of a directed verdict is in question. Had this case been submitted to the jury, and had the jury found that damage to the plaintiff resulted from the negligent diagnosis and treatment, we think such a finding would have to be sustained, upon the theory of the above cases that there is a preponderance of the probabilities or of the inferences in favor of such a finding.

From the foregoing it follows that the judgment must be reversed, and a new trial granted.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.