BRUINS, Administrator, Respondent, vs. BRANDON CAN-
NING COMPANY, Appellant.

*October 11—November 9, 1934.*

388

For the appellant there was a brief by *A. W. Lueck* and *J. L. Skupniewitz,* both of Beaver Dam, and oral argument by *Mr. Lueck.*

For the respondent there was a brief by *Barber, Keefe, Patri & Horwitz,* attorneys, and *W. Mead Stillman* of counsel, all of Oshkosh, and oral argument by *Frank B. Keefe* and *W. Mead Stillman.*

ROSENBERRY, C. J.   The defendant makes four contentions: (1) That the defendant was not liable for injuries

caused by the presence of the wagon on the highway; (2) that the evidence does not sustain the finding of the jury that the cancer of the breast from which the plaintiff suffered, was a natural and probable result of the injuries received in the collision; (3) that the plaintiff was guilty of contributory negligence as a matter of law; and (4) that the court erred in permitting plaintiff's counsel to read from the medical text-book, and in its refusal to instruct the jury as requested by the defendant.

(1) Upon the facts disclosed by the evidence and set forth in the statement of facts herewith, it is considered that the trial court was clearly right in holding as a matter of law that the wagon in question was parked on the highway pursuant to directions given by employees of the defendant company in the exercise of the right of control over the pea growing and harvesting operations reserved to the defendant in its contract. Hess was bound except in a few minor particulars to do what and only what the defendant directed him to do with respect to the growing and harvesting of the peas, including the delivery of the crop when harvested. Any argument with respect to the title of the growing crop or the crop when harvested is beside the point, for the reason that the defendant reserved a full right of control of the entire operation.

(2) The second contention of the defendant to the effect that the evidence does not show that a cancer of the breast from which the plaintiff suffered was a result of the injuries sustained by her in the collision presents a matter of some difficulty. From the evidence adduced on the trial it appears that the cause of cancer has not yet been discovered, not every injury produces a cancer, and only about twenty-five per cent of cancers are believed to be the result of injuries sustained by the patient. Under these facts defendant contends that it is impossible to say in a particular case with a reasonable degree of certainty that a particular cancer was the result of

a specific injury. On the other hand, there is a large amount of expert testimony to the effect that cancer has been observed in a large number of cases to follow an injury received by the patient at the place where the cancer developed. Whether in these cases a cancer develops because of some unusual susceptibility of the patient or from other causes is not definitely known. In this case the evidence establishes, (a) the fact of injury or trauma; (b) that it was sufficiently severe to cause a bruising of the breast; (c) that prior to the injury there was no observable indication of the presence of a tumor; (d) that the tumor or cancer in question developed at the point where the injury was sustained; (e) that the presence of the tumor or cancer was observable within seven weeks from the time of the accident; and (f) that clinical diagnosis and röntgenological evidence showed that the tumor was malignant, and at the time of the trial it had been removed and had been subjected to microscopical examination.

Upon the question of whether or not, these essential facts appearing, it can be said with a reasonable degree of certainty that the cancer was caused by the injuries sustained, there is a split not only among the experts who testified upon this trial but in the opinion of the medical profession generally.[1] Not only is there a division of authority in the medical profession but different conclusions have been reached in respect to the matter by the courts of this country.[2]

---

[1] See volume XCVIII, No. 6, December, 1933, Annals of Surgery, article, "Injury as a Causative Factor in the Development of Malignant Tumors," by Coley and Higinbotham, page 991.

[2] The following cases where recovery has been allowed: *Gaetz v. City of Melrose,* 155 Minn. 330, 193 N. W. 691; *Louisville & N. R. Co. v. Kemp's Adm'r,* 149 Ky. 344, 149 S. W. 835; *Baltimore & O. S. W. R. Co. v. Slanker,* 180 Ill. 357, 54 N. E. 309; *Atlantic Coast Line R. Co. v. Thompson,* 211 Fed. 889, 128 C. C. A. 267; *Rosenburg v. State,* 129 Md. 418, 99 Atl. 680; *Bannon v. Fox,* 199 Ky. 262, 250 S. W. 966; *Thompson v. New Orleans R. & L. Co.* 145 La. 805, 83 So. 19; *Canon Reliance Coal Co. v. Industrial Comm.* 72 Colo. 477, 211 Pac. 868; *Smith v. Primrose Tapestry Co.* 285 Pa.

The defendant relying upon *Matuschka v. Murphy,* 173 Wis. 484, 180 N. W. 821; *Gerber v. Wloszczynski,* 188 Wis. 344, 206 N. W. 206, and similar cases, argues that under the facts established the jury could do no more than guess or conjecture as to the real origin and cause of the malignant tumor from which the plaintiff suffered.

The real question presented is, Is the medical testimony sufficient to remove from the field of speculation and conjecture the cause of plaintiff's condition, so that a jury may say with a reasonable degree of certainty that the injury sustained by plaintiff was the cause of the subsequent cancerous condition? It would extend this opinion to an unwarrantable length to set out the medical testimony. We shall therefore in this opinion set out only so much of it as is necessary to an understanding of the questions determined.

First, as to the nature of the bruise or injury to the breast, Doctor Guth, who treated the plaintiff immediately after the injury, testified:

"She had a cut above her right eye; she had another cut in her upper lip, one in her lower lip, and both knees were bruised, and she was bleeding from the mouth. Her gums were pretty well bruised up, and her lips swollen. The side of her face was skinned, and she had black and blue spots on her legs. She had one bruise on her breast that I remember of. She came into the office unconscious. . . . There was not a scar on her breast at that time. There was a bruise

145, 131 Atl. 703; *Austin v. Red Wing Sewer Pipe Co.* 163 Minn. 397, 204 N. W. 323; *Winchester Milling Co. v. Sencindiver,* 148 Va. 388, 138 S. E. 479; *King v. Munising Paper Co.* 224 Mich. 691, 195 N. W. 812.

The following case where recovery was denied: *Trapnell v. Red Oak Junction,* 76 Iowa, 744, 39 N. W. 884.

The following are analogous cases not involving cancer: (Miscarriage) *Hawkins v. Front Street Cable R. Co.* 2 Wash. 592, 28 Pac. 1021, 16 L. R. A. 808. (Injury from explosion) *Laidlaw v. Sage,* 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216. (Malpresentation) *Simonson v. Minneapolis & St. L. R. Co.* 88 Minn. 89, 92 N. W. 459.

and broken skin. It was not broken enough though to require any stitches. I looked at it and bandaged it up a bit with some mercurochrome. I did not feel any bunch there at that time."

The plaintiff testified with respect to her injuries as follows:

"The next thing I knew I was in the doctor's office in Brandon. . . . I was suffering from pain and shock. The doctor put in four stitches over the right eye. There were other cuts that required stitches. The whole right side of my face was bruised and a great deal of the skin off. Then there were cuts in my mouth and some of my teeth were injured, and as a result I have had five of them extracted. And then my right knee was badly injured, all the skin rubbed off. My whole body was a mass of bruises. On the top of the left breast there was a slight cut and a bruise, and later a bunch developed which necessitated an operation. . . . Before this accident my health was very good, and I did all the usual farm work that the housewife does on the farm without any trouble. . . .

"This last operation was performed on October 23, and I was in the hospital nine days."

This is all the testimony there is in the record with respect to the nature of the bruise. Five physicians were called in the case, four to testify with respect to the cause of the cancer, and one, Dr. Martin W. Johnson, a pathologist, who made a microscopical examination of the mass removed from the plaintiff's breast. He testified that the examination showed early carcinoma or cancer; that the breast also showed the results of chronic mastitis, which is an inflammation. There were some cysts, which are cavities filled with fluid; that there was a hard area. He testified further that, as the carcinoma progresses, the area of infiltration of carcinoma, the cells spread and expand, and in mastitis there is a multiplication of those cells within the acini, which is the space in which milk is secreted, and when malignancy de-

velops there is a reproduction of those cells which extend out into the fibrous tissue.' He further testified that chronic mastitis is an inflammation of the breast tissue which has been of some duration; that it may run along for a number of weeks or it may even persist for years. He gave it as his opinion from the examination that this chronic condition in plaintiff's breast had existed for several months, possibly longer; that it might have been there a year; that the cysts might have been there a number of weeks, or longer, or several months, or more. Doctor Johnson did not testify as to the cause of the cancer.

Dr. Ralph G. Mills of Fond du Lac was called as an expert by the plaintiff. The hypothetical question included all of the facts which the evidence tended to establish in the plaintiff's view and the following statement with reference to the nature of the bruise:

"The doctor observed the bruise and abrasion on her left breast and made an examination and found no evidence of any lump in her breast; painted it with mercurochrome and iodine."

In response to the question whether or not the injury caused the cancer, Doctor Mills replied: "It may have." He gave the following reasons for his qualified answer. He said:

"The relationship between the observed instance of a definite injury, and the subsequent development of cancer within certain periods of time, suggest that there must be a relationship between those two; the experimental evidence is such as to lead one to believe that a single instance of injury, or a repeated or chronic type of injury may and do, under certain conditions, bring about a determination that a cancer or malignant growth shall be located at a certain place, and in a certain—of a certain character, and within a certain period of time—that is the reason that I use the word 'might' ['may'].

"As to why, I didn't say that it did, or that it may; I wish to express the conservatism of medicine, and the assumption of ignorance at the same time, that we are unable to look at

or to examine in any known way any particular malignant growth and say that this did or it did not arise as a result of injury."

He testified that the following conditions must exist in order that a trauma or injury may stand in causal relationship to cancer.

"First, a determination as to no previous symptoms in that particular area would be presumptive evidence. Second, the fact of a direct injury at that location. Third, the time element occurring between the time of the direct injury and the discovery of the cancer bears a causal relation between trauma and cancer. Fourth, the fact of the location of cancer in relation to the point of injury also bears on the question determining causal relation between the two."

Doctor Mills was a graduate of the Illinois and Northwestern Universities, had been connected with the Union Medical College in Korea, the Peking Union Medical College in Peking, China, University of Chicago, Johns Hopkins University, was professor of pathology in the University of Minnesota, was connected for four years with the Mayo Clinic, had been engaged in general practice in Fond du Lac for three years, and had had unusual opportunities for study and investigation. A consideration of his testimony impresses one with the fact that he was himself in doubt as to the cause of the cancer from which the plaintiff suffered.

Dr. Burton Clarke, a graduate of the University of Wisconsin and of Harvard Medical School, had been in practice six years in the city of Oshkosh. The hypothetical question propounded to him involved the same statement to the effect that the doctor (Doctor Guth) observed the bruise and abrasion on her left breast, made an examination and found no lump in her breast, painted it with mercurochrome and iodine. In response to a query as to whether or not the cancer was caused by the injury, Doctor Clarke said :

"Considering all the facts in hand, and the fact that so far as can be humanly told there was no tumor in her breast prior

to the injury, and considering the fact that an acceptable period had elapsed for such a cancer to develop to the size of a walnut, as given, and granting the fact that she had an adequate bruise to the breast, it is my opinion that it is very probable that this cancer developed as a result of her injury."

It is to be noted that Doctor Clarke based his reply in part upon the existence of facts not appearing in the hypothetical question. It did not appear either in the testimony of the plaintiff or of Doctor Guth that either of them had made any digital examination of the region in which the cancer developed at the time of the injury, nor is it disclosed in the testimony what constitutes an "adequate bruise."

Upon cross-examination Doctor Clarke testified:

"The essential relation of traumatism to cancer has never been proven insofar that cancer has actually been produced in an animal by trauma—that is, by a single trauma. On the other hand, cancers have been repeatedly produced in animals by repeated trauma. . . ."

And on redirect examination he testified:

"The field of the study of cancer in the entire world has not developed to a point where any medical man can testify to an absolute certainty by demonstrating clinical findings the exact cause of cancer in any case."

Dr. David Twohig, who had been engaged in the practice of medicine in Fond du Lac for thirty years, in response to a hypothetical question as to whether or not the cancer was caused by the bruise, testified in part as follows:

"Taking into consideration the further fact that this lady is forty years old and never bore any children, I have an opinion to a reasonable certainty as to what caused the cancer in Mrs. Bruins. I am basing my opinion more on what Doctor Johnson said that he found, chronic mastitis. This is one of the causes, supposed causes or theories, as to the cause of carcinoma. It is my opinion that this carcinoma resulted not from the injury, because the research work that

has been done pertaining to cancer of the breast states very plainly that cancer of the breast does not result from one injury unless there is a keloid developed first. A keloid is described in the skin—that would require an extensive injury to the skin to develop a keloid in this case. It is possible for a cancer to develop after a single injury, but according to the greatest amount of research that has been done the consensus of opinion is that it does not result from a single injury."

On cross-examination he testified:

"A trauma might be an exciting factor to produce mastitis. If mastitis sets up carcinoma may possibly develop after a period of months—it could. I think mastitis might be coming on for a long time, . . . before it develops a carcinoma. By several months I mean to say six months or a year.

"The keloid is simply a scar in the skin that becomes very thick and heavy and indurated, and later, as a result of the irritation from the keloid, after some time a carcinoma might develop."

Dr. S. E. Gavin, an expert called by the defendant, had been practicing medicine in Fond du Lac for thirty-four years. Upon being asked a hypothetical question by counsel for the defendant, plaintiff objected on the ground that the hypothetical question did not include all of the facts established upon the trial. When counsel for the plaintiff was asked what additional facts he proposed, he replied as follows:

"At the time of the examination by the attending physician at the time first aid was rendered following the accident, the attending physician observed in his examination a bruise and cut on her left breast, and administered iodine and mercurochrome, and at that time found no evidence of any mass or tumor;" and other facts not material here.

Doctor Gavin when asked, basing his answer upon a hypothetical question, "Have you an opinion to a reasonable certainty as to what was the cause of her cancerous condition?"

replied "No;" that there was nothing in the facts which would indicate a cause of cancer. He said:

"In addition to those facts might I ask if the breast was examined for a mass, or just simply treated for a wound at the time of the injury?"

Counsel for the plaintiff stated:

"I am not going to split hairs over the question as to whether he felt her body or whether or how he did it. He is a physician; he is asked the question as to whether or not there was any bunch or mass present at that time, and he said 'No.'"

At the close of the colloquy, Doctor Gavin was asked if he wished to change his answer, and he said he did not. For the reason that the condition of the breast at the time of the injury becomes an important factor in this case, Doctor Guth's testimony is reproduced here in the form of question and answer:

"*Q.* Was there a scar on this woman's breast, and a bruise? *A.* There wasn't a scar at that time; there was a bruise, and broken skin.

"*Q.* Was the skin broken? *A.* Yes, sir, but it wasn't broken enough to require any stitching, though.

"*Q.* Did you make an examination of it at that time? *A.* Well, I looked at it, and bandaged it up a bit with some mercurochrome that we had there. That is all that was done to that.

"*Q.* Was there—well, I mean did you make an examination to disclose whether there was any bunch? *A.* I didn't feel any bunch there at that time."

It should be said at the outset that the evidence given by the expert witnesses in this case is subject to none of the criticism so often leveled at the testimony of experts. While the experts differed, they differed on scientific grounds and not as the result of partisan bias. It was the opinion of Doctor Johnson, the pathologist, that the mastitis was of long standing. It was the view of Doctor Mills that the blow may

have caused the cancer. He would not say that in his opinion it did. It was the view of Doctor Clarke that the blow "very probably" caused the cancer, but in his answer he assumed facts not established by the evidence, at least to a reasonable degree of certainty. The colloquy between the court and counsel at the time Doctor Gavin sought to elicit further information with respect to the examination actually made laid bare one of the weak points in plaintiff's case. Doctor Clarke assumed that there was an adequate bruise. Neither he nor anyone else testified as to what an adequate bruise is or whether the bruise which plaintiff received was adequate. He assumed that so far as could be humanly told there was no tumor in her breast. Doctor Guth did not testify that he examined the breast for tumor, but looked at it, bandaged it up with some mercurochrome, and when asked whether or not he made an examination said: "I did not feel any bunch there at the time." If the extent of the examination was such as was necessary to render first aid to the plaintiff, and such contact as he had with the breast was in applying the bandage, it would not make certain as far as humanly possible that there was no lump in the breast at the time. Doctor Guth testified that there were black and blue spots upon plaintiff's body, but he said nothing about the injury to the breast being black and blue or anything else to give any clue as to the extent of the bruise, except that the cut was not sufficient to require stitches. The only evidence in the case which tends to remove the cause of plaintiff's cancer from the realm of doubt and speculation is that of Doctor Clarke, which as already pointed out, is based upon facts assumed and not proven.

We have examined all of the cases cited to our attention by plaintiff's counsel where recovery has been allowed in cases where it was claimed that cancer resulted from traumatism, and we find no case at all parallel in its facts to this case. Is the proof offered sufficient to sustain a finding of a jury that

the cancer to a reasonable certainty was caused by the blow? Proof to a reasonable certainty need not exclude all possibility. In few cases is the proof offered so conclusive as to exclude possibilities.

The question of when proof permits of a finding to a reasonable certainty has been considered by this court in a number of cases. They are collected and analyzed in *Hafemann v. Seymer,* 195 Wis. 625, 219 N. W. 375, where it is said:

"We must hold that the jury was at liberty to find the proximate cause of the infection to a reasonable certainty from the reasonable probabilities inferred from the evidence."

In *Hallum v. Omro,* 122 Wis. 337, 99 N. W. 1051, it was said:

"There can be no recovery, legitimately, for permanent impairment in a case like this in the absence of competent evidence warranting a conclusion, with reasonable certainty, that such impairment will exist as a result of the accident; but it is not necessary that opinion evidence should be confined to that high degree of certainty. Experts may properly testify to the mere probabilities of the case."

The matter was also dealt with in *Vilter Mfg. Co. v. Industrial Comm.* 192 Wis. 362, 212 N. W. 641, and in *Pfister & Vogel L. Co. v. Industrial Comm.* 194 Wis. 131, 215 N. W. 815. These cases were followed in *Schwartz v. Zellmer,* 209 Wis. 583, 245 N. W. 585. There was expert evidence in these cases to the effect that in the opinion of the experts or some of them the injury complained of was the result of certain specified causes. No physician gave such evidence in this case except Doctor Clarke, whose opinion that the cancer was "very probably" caused by the injury was based upon facts assumed and not proven. When an expert in his answer makes assumptions not included in the hypothetical question and established by the evidence, his answer

does little or nothing to establish causal relation in a particular case. It appears from an examination of the cases where recovery has been allowed in cancer cases that the medical witnesses testified that the cancer was caused by the traumatism, and in many of the cases the circumstances were such that a finding of the jury might be sustained upon the testimony of laymen.

In *Austin v. Red Wing Sewer Pipe Co.* 163 Minn. 397, 204 N. W. 323, the plaintiff undertook to throw out of a car a piece of soft coal weighing three or four pounds. It struck the side of the top of the car and fell back striking him on the cheek, knocking him down. The plaintiff suffered a wound or cut which bled profusely. He washed and bandaged it, and it has continued to be the subject of bandage and care. It was contended that the evidence did not justify the award and that cancer does not result from injury. The court said:

"The substance of the testimony of the medical witnesses called in behalf of the employee is that, in their opinion, the cancer resulted directly from the injury. It is not for us to decide as a scientific fact that trauma causes cancer or that cancer is a medical mystery. The employee in the course of his employment suffered an injury, upon his cheek, at a place previously free from blemish. Under constant care, it developed a malignant growth which was eventually diagnosed as cancer. The circumstance alone is pretty strong evidence that the injury was the proximate cause of the result, and would be quite convincing to the mind of a layman. There is no apparent break in the chain of causation. If the medical profession conceded that it did not know the cause of cancer, the connecting events between the cause and effect in this case might be sufficient to justify the conclusion that the injury was the legal cause and that the result should be compensable."

In this case it is true that the plaintiff testified that she was disabled from the time of the accident on, but she did not say that the disability resulted from any trouble in her breast.

She was knocked unconscious, had several teeth loosened so that it was necessary to extract them, and sustained severe bruises which fully account for the disability complained of. Having in mind that a verdict may be sustained upon a preponderance of probabilities to a reasonable degree of certainty, that means no more than that probabilities must preponderate so strongly that the fact sought to be proven is established to a reasonable certainty. We find no such preponderating probabilities in this case. The evidence when analyzed establishes no more than a possibility which leaves the matter in the realm of doubt and speculation. Upon the record the case is ruled by *Matuschka v. Murphy, supra.*

While upon the record we are obliged to hold that the finding of the jury that the injury to the breast of plaintiff caused the cancer is not sustained by the evidence, it is also considered that the case has not been fully tried upon that issue. Doctor Guth should be able to state, if the inquiry were pursued, what kind of an examination he made, and what, if anything, he did to discover whether or not a lump was present in the plaintiff's breast at the time he dressed her injuries. A study of the cases cited to our attention also suggests that if a lump or a condition of chronic mastitis was present at the time of the injury, if the injury was extensive enough, the malignancy which subsequently appeared might have been excited or at least accelerated by the injury, a matter which was not gone into in this case to any extent. The other elements necessary to be established seem to be supported by the evidence to a reasonable degree of certainty. The hypothetical questions include facts not proven. Doctor Guth apparently declined to say that he made an examination and could discover no lump. The fact testified to should have been stated in the hypothetical question as he testified to it. All other questions presented in the case are resolved in favor of the plaintiff. The judgment will be reversed, and the cause

remanded for a new trial solely upon the question of whether or not the cancer which plaintiff suffered was caused by the injury which she sustained in the accident, and, if the cancer was caused by the injury, the amount of damages sustained by reason thereof. Upon a determination of those issues judgment for plaintiff should be entered accordingly.

(3) Defendant contends that under the rule applied in *Knipfer v. Shaw,* 210 Wis. 617, 246 N. W. 328, 247 N. W. 320, the plaintiff was guilty of contributory negligence as a matter of law. In that case the plaintiff was guilty of contributory negligence as a matter of law in continuing to ride in the automobile under the circumstances of the case. There is one sufficient answer to this contention. In *Knipfer v. Shaw* the negligence of which the plaintiff was guilty was continuing the journey when the night was foggy, the road was slippery, visibility was low, and she therefore assumed the risk of such an injury as resulted from a collision with another traveler under the circumstances.

In this case the injuries sustained by the plaintiff were due to the parking of the wagon upon a highway in violation of the statute without giving any warning of its presence. Plaintiff was not required to foresee that a wagon would be so parked in violation of law. It was therefore not a risk which she assumed by undertaking the journey with her husband, and she was not negligent in continuing the journey.

(4) Plaintiff's counsel read a short extract in the course of cross-examining one of the medical experts. The expert testified that he was familiar with Boyle's Surgical Pathology. He further testified that he knew of no authority which says that a sudden trauma may be followed by the development of a malignant growth. To impeach the expert, plaintiff's counsel stated that he offered the extract in question for the purpose of showing that a reputable authority made that statement. Under the circumstances it is considered that the

extract was admissible for the purpose for which it was offered.

The defendant also complains of the failure of the court to instruct the jury as requested. The requested instruction was as follows:

"You are instructed that in determining the proportion of all of the negligence of all of the persons which produced plaintiff's injuries, you may take into consideration the negligence of plaintiff's husband, Arnold Bruins, if any you find there was in the operation of his car at and immediately before the collision in question."

As the trial court held, plaintiff's husband was not a party to the action. If the defendant was negligent, the negligence of plaintiff's husband did not constitute a defense. There is no room for the application of the principle of comparative negligence under our statute except in cases where the plaintiff is found to be negligent. If the defendant was guilty of a want of ordinary care, which proximately caused plaintiff's injuries, it is liable whether the plaintiff's husband was guilty of negligence or not. The requested instruction was not relevant under the evidence in this case and the court properly denied the request.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings as indicated in the opinion.