5 Wis.2d 37 (1958)
RUDY, Appellant,
v.
CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Respondent.
Supreme Court of Wisconsin.
September 9, 1958.
October 7, 1958.
*42 For the appellant there was a brief by Cavanagh, Mittel-stead, Sheldon, Heide & Hartley of Kenosha, and oral argument by William A. Sheldon.
For the respondent there was a brief by Bender, Trump, Davidson & Godfrey, attorneys, and Rodger S. Trump of counsel, all of Milwaukee, and oral argument by Rodger S. Trump.
FAIRCHILD, J.
Plaintiff seeks reinstatement of the verdict and argues that it may be supported by any one of three propositions: (1) Proof of the first carrier's receipt of the animals in good condition and delivery by defendant in diseased condition established negligence unless defendant proved absence of negligence; (2) the evidence was such as to permit the jury to find, upon balancing the probabilities, that the plaintiff's cattle contracted their disease from bacteria in the cars left there by diseased cattle previously transported; (3) defendant's failure to produce records showing names of previous consignees of animals shipped in the same cars raised an inference which would support the verdict.
At the outset it should be noted that this action was brought in contemplation of the Carmack amendment to the Interstate Commerce Act, 49 USCA, sec. 20 (11), (12). Under its provisions damage caused by any carrier en route may be recovered from the delivering carrier (the defendant here) and the delivering carrier may recover, in turn, from the carrier on whose line the injury shall have been sustained.
It should also be noted that the plaintiff could not recover unless negligence were found to have occurred upon the part of one of the carriers. The cattle were shipped pursuant *43 to a contract which provided in material part that, "Except in the case of its negligence proximately contributing thereto, no carrier or party in possession of all or any of the livestock herein described shall be liable for any loss thereof or damage thereto or delay caused by act of God, public enemy, quarantine, the authority of law, the inherent vice, weakness, or natural propensities of the animal, ..." Because of the existence of this provision and because the damage in question arose from the contraction by the animals of infectious disease, the carriers are not liable as insurers. Absolute liability was imposed upon the carrier where the cause of damage to an animal could not be determined and where no special contract was in effect in Laridaen v. Railway Express Agency (1951), 259 Wis. 178, 47 N. W. (2d) 727.
(1) Burden of Proof to Establish Lack of Negligence. The parties agree that there is a general rule that when a shipper has proved delivery of goods to a carrier in good condition and delivery by the carrier in damaged condition a prima facie case has been established and "it becomes incumbent on the carrier to prove that the loss arose from some cause, or under such circumstances, that he is not liable." 2 Jones, Commentaries on Evidence (2d ed.), p. 897, sec. 500. Defendant points out, however, that many courts recognize an exception to the general rule in cases where recovery is sought for sickness of livestock in transit. The reasons given for the exception are the likelihood that disease may be present, though undiscovered, at the time of shipment and that disease may result from climatic and other conditions which a carrier could not control and for which it would not be responsible. 9 Am. Jur., Carriers, p. 948, sec. 845; 13 C. J. S., Carriers, p. 555, sec. 254 k (1); Vaughn v. St. Louis-San Francisco R. Co. (1929), 223 Mo. App. 732, 15 S. W. (2d) 901, 906; Bloecher & Schaaf v. Pennsylvania R. Co. (1932), 162 Md. 463, 160 Atl. 281, 284.
*44 (2) Preponderance of Probabilities. It is undisputed that the cars were not cleaned and disinfected. The Frisco had no duty under the regulation to clean and disinfect them unless they had previously contained livestock affected with or carrying the infection of contagious, infectious, or communicable disease. Plaintiff could offer no direct proof that the cars had contained such diseased or infection-carrying cattle, but asserts that the fact that plaintiff's cattle became ill with shipping fever, coupled with the possibility that it may have been transmitted from diseased or infection-carrying cattle previously contained in the cars and other facts in the record, created a preponderance of probabilities that the disease came from diseased or infection-carrying cattle previously contained in the cars. If the finding to that effect can be sustained, then the failure of the Frisco to clean and disinfect the cars would constitute causal negligence.
Plaintiff relies upon two Wisconsin cases: Vilter Mfg. Co. v. Industrial Comm. (1927), 192 Wis. 362, 212 N. W. 641, and Pfister & Vogel L. Co. v. Industrial Comm. (1927), 194 Wis. 131, 215 N. W. 815. In the Vilter Case the court sustained a finding of the industrial commission that an employee contracted smallpox while performing repair work at an isolation hospital. The medical testimony was that it could not be stated as a certainty that he contracted smallpox while working at the hospital and that it was possible that he might have contracted it on streetcars, trains, or elsewhere, but that it was much more probable that he contracted it at the hospital than elsewhere. The court held that a finding to a reasonable certainty may be based upon evidence which shows only a preponderance of probabilities.
In the Pfister & Vogel Case a tannery employee died because of infection of the liver by a germ which commonly produces a disease in cattle. The court sustained a finding of the commission that he contracted the disease in his employment. There was medical evidence that the germ might *45 be imbedded in hides in the tannery and that it could pass from the hides to the hands of the man handling the hides and then into his mouth. The germ could also pass through the air and enter through the mouth or nose. All the physicians agreed that there was at least a possibility that the deceased was infected with the germ from hides handled in the tannery. The physicians called by the applicant testified that it was more probable that the disease was contracted in the tannery than anywhere else. This court said, page 135, that, "The inferences preponderate in favor of the finding that he was exposed to this germ in appellant's tannery. The preponderance of inferences is so great that the commission could say that it amounted to a reasonable certainty."
In our view the proof before us does not show that the probability of the transmission of the infection from the diseased or infected cattle previously occupying the cars was greater than the probability of other sources of infection. Neither of the experts was asked whether he had an opinion as to the more-probable source of infection under the circumstances. There was testimony that the infection can be transmitted "in any conceivable way" and it does not seem to us that the evidence gave the jury enough information about the disease so that it could reasonably consider it less probable that some of the cattle may have been infected on the farm from which they came and spread the infection to the rest; that all may have contracted the disease in the stockyards at Springfield, or when removed from the cars for watering; or that all the cattle may have acquired bacteria from various sources other than from the cattle previously contained in the cars and have come down with the illness because of weather conditions while in transit. Thus the fact essential to plaintiff's recovery was left in the realm of speculation.
*46 (3) Failure to Produce Records. Plaintiff's counsel asked defendant's counsel well in advance of trial for the names and addresses of consignees of livestock previously shipped in the same cars. Defendant's counsel was unable to obtain this information. The names and addresses alone would not have established any important fact, but would have enabled plaintiff's counsel to inquire of the previous consignees whether any of the livestock received by them had suffered from shipping fever. Plaintiff's argument essentially is that the failure of defendant either to produce the previous consignees as witnesses at the trial or to give plaintiff their identity so that he could interview them gives rise to an inference sufficient to support a finding that had the consignees been located and given testimony they would have testified that the animals they received had had shipping fever.
Plaintiff relies upon a doctrine recently affirmed by this court in Feldstein v. Harrington (1958), 4 Wis. (2d) 380, 388, 90 N. W. (2d) 566. It was said, "The general rule is that the failure of a party to call a material witness within his control, or whom it would be more natural for such party to call than the opposing party, raises an inference against such party."
One of the elements involved is control. 1 Jones, Evidence (4th ed.), p. 51, sec. 21. We have no information as to the availability of the consignees as witnesses but plaintiff would doubtless point out that only the requested records could show their identity and location. So we next come to the question of possession and control of records which would show this information. Certainly it was proved that the waybills for the previous shipments would show the consignees. It was established, however, that the waybills would be in the possession of the railroad on whose line the previous shipments terminated and there is nothing to show that those shipments terminated at any point on the Frisco *47 line. Presumably the cars may have returned empty to Springfield from a trip to a point on another line. Plaintiff suggests that the Frisco would have records of the consignees of at least four of the cars because they belonged to the Frisco. The evidence does not establish that such records are kept by the railroad owning the cars when the shipment has been to a point off its line. Assuming, however, that the Frisco does have the information, then the question would arise whether the relationship between the present defendant and the Frisco in this lawsuit would place the defendant in a position where the defendant's failure to produce the Frisco's records would be equivalent to defendant's failure to produce its own records. Even, however, if we were to make all the necessary assumptions favorable to plaintiff, we conclude that the resulting inference would not be sufficient to sustain the finding, standing alone, but could be treated only as corroborative of other legally sufficient evidence.
This inference "does not operate to relieve the adverse party of the obligation of establishing his case." 1 Jones, Evidence (4th ed.), p. 53, sec. 22; 2 Wigmore, Evidence (3d ed.), p. 179, sec. 290. The inference "is persuasive rather than probative." Stocker v. Boston & M. R. R. (1930), 84 N. H. 377, 379, 151 Atl. 457, 458, 70 A. L. R. 1320, and cases cited in annotation at page 1326.
In the Feldstein Case above cited the plaintiff was attempting to use nonproduction by defendant of an available witness as persuasive material. It was there held to be error not to permit plaintiff to prove that he had been examined by a physician at the defendant's request so that comment could be made to the jury upon the failure of the defendant to call the physician as a witness.
By the Court.  Judgment affirmed.
MARTIN, C. J., took no part.