DAVID J. CODDAIRE, administrator, *vs.* H. ROBERT SIBLEY.

Essex.    December 3, 4, 1929. — January 14, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence*, Of dentist.  *Dentist.  Evidence*, Opinion: expert; Competency.  *Witness*, Expert.  *Proximate Cause.  Practice, Civil*, Ordering verdict, Exceptions.

At the trial of an action of tort for personal injuries against a dentist, there was evidence for the plaintiff that the defendant extracted the plaintiff's teeth and later prepared two plates and inserted them in the plaintiff's mouth, which then was in good condition; that the plaintiff then complained of pain; that the defendant removed the plates and, at various times thereafter, attempted to fit them; that the plaintiff made twelve or fifteen visits to the defendant's office; that on one such occasion the defendant kept the plates over night and, upon replacing them the next day, said to the plaintiff, "They are all right now — wear them until you are used to them"; that the defendant said to the plaintiff that one of the plates was too long at first; that the plates were rough in places; that they were not made in good and workmanlike manner; that the plaintiff's face became swollen "in the jaw" and in bad condition; that a growth, diagnosed as cancer, developed in his mouth; that the cancer developed from continued irritation in the plaintiff's mouth; and that such irritation "without any question" was due to the continued wearing of rough plates by the plaintiff.  There was evidence for the defendant that the plates did not cause the plaintiff's condition and that the growth in the plaintiff's mouth was due to a certain other disease.  At the close of the evidence, the trial judge denied a motion by the defendant that a verdict be ordered in his favor.  The defendant presented no requests for rulings.  The jury found for the plaintiff.  *Held*, that

(1) The defendant's motion properly was denied: on all the evidence, the questions, whether the plates were defective when made or during the time of the defendant's treatment of the plaintiff, whether the defendant was negligent with regard thereto, whether the plaintiff suffered from cancer and whether the cancer was the proximate result of negligence on the part of the defendant, were for the jury;

(2) Whether the plaintiff was suffering from another disease than cancer when the defendant made the plates and inserted them in the

plaintiff's mouth was immaterial since a finding was warranted that the cancer was a proximate result of the defendant's negligence;

(3) Furthermore, since there was evidence that the negligence of the defendant caused pain and suffering on the part of the plaintiff irrespective of the growth in his mouth, the defendant's motion could not properly have been allowed even if there had been no evidence that the plaintiff was suffering from cancer caused by that negligence: if the defendant desired to raise the question of causation, he should have done so by appropriate requests for rulings.

A physician testified for the plaintiff at the trial above described that in his opinion the plaintiff was suffering from cancer caused by irritation resulting from continued wearing of the plates; that he found no evidence of the disease concerning which the defendant's witnesses testified; and that he had made a certain test which confirmed his physical diagnosis, but that he had not based his diagnosis on that test alone. On cross-examination he testified that the test he used had been in existence about fourteen years; that it "was unfortunately not in general use among physicians"; that it was used probably by two or three thousand of the one hundred fifty-five thousand doctors in the United States; that it was not in use in any hospital in the United States; that it was not recognized by any organization except one; and that it had been submitted to the United States Public Health Service, which never had investigated nor adopted it. At the conclusion of the witness' testimony, the defendant, without having objected to the qualifications of the witness as an expert, moved that his testimony be struck out on the ground that it was based largely upon theories of diagnosis which were without medical or scientific authority; and especially that his testimony be struck out so far as it was based on said test. The motion was denied. The defendant excepted. *Held*, that

(1) The testimony by the witness was competent;

(2) It could not be said by this court as a matter of law that the testimony was without value: its weight was for the jury;

(3) Furthermore, since the witness's diagnosis was not based solely on the test, the jury might have believed his other testimony while disregarding his testimony as to the test entirely;

(4) The exception was overruled.

It appeared that, previous to the trial above described, which began on November 21, the plaintiff's counsel several times had suggested to the counsel for the defendant that a physical examination of the plaintiff ought to be made in behalf of the defendant; and that examinations had been made in his behalf on October 14 and during the trial, both inside and outside the court room. On December 6, while the trial still was in progress, the defendant's counsel offered to prove that, on November 23, he had requested that a further physical examination of the plaintiff be made in behalf of the defendant and had stated that he would like to have the plaintiff's answer in a day or two; and that another conference had been held before the trial judge concerning the desirability of an examination of the plaintiff. It appeared also that, after the conference before the judge, neither counsel had

made any reference to the matter. The offer of proof was excluded. *Held*, that

(1) It did not appear from the offer that the plaintiff had refused to be examined a second time: a finding by the judge was warranted that the plaintiff was willing at all times that his condition be known by the defendant;

(2) The judge and the plaintiff's counsel would have been justified in assuming that the request made by the defendant on November 23 had been waived;

(3) The offer of proof properly was excluded.

TORT for personal injuries, originally by Philipp Desjardins; and after his death prosecuted by the administrator of his estate. Writ dated September 8, 1928.

The action was tried in the Superior Court before *Brown*, J. A physician called by the plaintiff testified on cross-examination with reference to the "electronic test" used by him and referred to in the opinion that such test had been in existence about fourteen years; that it "was unfortunately not in general use among physicians"; that it was used probably by two or three thousand of the one hundred fifty-five thousand doctors in the United States; that it was not in use in any hospital in the United States; that it was not recognized by any organization except one; and that it had been submitted to the United States Public Health Service, which never had investigated nor adopted it. Other material evidence is stated in the opinion. At the close of the evidence, the judge denied a motion by the defendant that a verdict be ordered in his favor. The defendant presented no requests for rulings. The jury found for the plaintiff in the sum of $10,000. The defendant alleged exceptions.

*L. E. Keeley & A. D. Hill*, for the defendant.

*W. G. Todd*, (*D. J. Coddaire* with him,) for the plaintiff.

CROSBY, J. This is an action of tort to recover for injuries alleged to have been suffered by the plaintiff's intestate caused by negligence of the defendant, a dentist, in the making and insertion of artificial plates in the mouth of the intestate, and by negligent treatment and advice of the defendant relative thereto. Philipp Desjardins, the intestate, who will hereafter be referred to as the plaintiff,

testified at the trial, and died shortly after a verdict in his favor was returned. The action is now prosecuted by the administrator of his estate. The case is before this court upon exceptions to the refusal by the trial judge to admit one offer of proof and to grant these motions: (1) to direct a verdict for the defendant at the close of the evidence, (2) to strike out the testimony of a witness called by the plaintiff at the conclusion of his testimony, on the ground that it was based, to a large extent at least, upon theories of diagnosis that were without medical or scientific authority, and therefore without basis for submission to the jury, and (3) to strike out the testimony of the same witness especially so far as it was based on an "electronic test."

There was evidence tending to show the following facts: The plaintiff was forty-four years of age. In April, 1927, he employed the defendant who extracted nineteen teeth, which were all the plaintiff had at that time. The next day when he returned to the defendant's office his mouth was in good condition. About two months later, when the defendant took impressions for the purpose of making artificial plates, his mouth was then in good condition, and the defendant so stated to him. About the middle of September following, the defendant inserted two plates in the plaintiff's mouth, and the latter then complained of pain. The defendant removed the plates, and at various times thereafter before April, 1928, attempted to fit them, the total number of visits to the defendant's office before that date being twelve or fifteen. At the last visit the defendant said to the plaintiff, "Oh, that is nothing, just a little canker," and he burned it and told the plaintiff to put iodine on it. The defendant then put the plates back in the plaintiff's mouth. He had told the plaintiff when he first filed the plates that one of them was too long.

The plaintiff testified that about two or three weeks before he was last treated by the defendant the latter kept the plates over night replacing them in the plaintiff's mouth the next day, and said to him, "They are all right now — wear them until you are used to them"; that the left side

of his face was swollen "in the jaw" and in bad condition. The plates were admitted in evidence and showed that they were rough in places, and if worn would tend to cause an irritation. There was further evidence that as a result of irritation a cancer developed in the plaintiff's mouth. There was medical testimony to the effect that the plates were in such condition that they would cause irritation by reason of rough and sharp edges, and that they were not made in a good and workmanlike manner.

There was evidence tending to show that a physician called by the plaintiff was a specialist in cancers and tumors. He testified that he examined the plaintiff on November 25, 1928, and found a large mass extending from the angle of the left jaw which practically filled the entire left side of the mouth; that it was ulcerated and discharging; that the plaintiff was suffering from a form of cancer of the jaw called sarcoma; that a rough plate would cause an irritation at point of contact, and that he had treated cases in which cancer had resulted from an irritation caused by a jagged tooth or a roughened plate; that such irritation would be first indicated by inflamed and reddened tissues, and if permitted to continue would develop a malignant growth, cancerous in nature; that if the source of the irritation were removed the irritation would undoubtedly disappear; that in the present case the progress of the disease would be slow at first and then very rapid, and fatal within one or two years; that the condition is accompanied by much pain and suffering. In answer to a hypothetical question this witness testified: "My opinion is that this man at the present time is suffering from a cancer of the jaw, a form of cancer known as sarcoma; that the cancer, sarcomatous type of cancer, is caused by a continued irritation over a continued period of time at that particular point, and that irritation without any question in my mind was due to the continued wearing of that plate." The witness further testified that he made a blood test which confirmed his diagnosis of sarcoma; that as a result of this blood test he could exclude syphilis and tuberculosis. In cross-examination he testified

that the blood test he took was not the Wasserman test; that in diagnosing syphilis the Wasserman test was that most commonly employed; that the test he employed was known as the electronic or radio test; that he had not based his diagnosis of cancer alone on the electronic test, but that he confirmed his physical diagnosis by that test; that he got no history from the plaintiff justifying a diagnosis of syphilis and that an examination of the plaintiff showed no indication of it.

In view of the entire evidence the defendant's motion for a directed verdict was rightly refused.

It is the contention of the defendant that there was no negligence in the making of the plates; that from the time they were made until they were last adjusted he was constantly grinding and adjusting them; that there was no evidence of their defective condition during that time, but that they had been tampered with after he last adjusted them, and that an examination of the entire evidence does not warrant as matter of law the conclusion that the plates were defective during the time the plaintiff was treated by the defendant.

It was for the jury to determine whether upon the evidence the plates were defective when made, or during the time the plaintiff was treated by the defendant.

It is also contended by the defendant that there was no sufficient evidence to warrant a finding that the plaintiff was suffering from cancer, or, if there were such evidence, that cancer was caused by the condition of the plates.

It was for the jury to determine whether the defendant was negligent in the making and filing of the plates. *Bates* v. *Dr. King Co.* 191 Mass. 585. *Drakes* v. *Tulloch,* 220 Mass. 256. *Toy* v. *Mackintosh,* 222 Mass. 430. *Chesley* v. *Durant,* 243 Mass. 180. *King* v. *Belmore,* 248 Mass. 108, 112. Whether the plaintiff had a cancer and whether it was caused by the lack of reasonable skill on the part of the defendant or was due to other causes for which the defendant was not responsible, were questions of fact for the jury to decide. *Morris* v. *Weene,* 258 Mass. 178, 180. *Butler* v. *Layton,* 266 Mass. 117.

The jury were not required to believe the testimony of experts called by the defendant to the effect that the plates did not cause the condition of the plaintiff. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314. If the plaintiff had syphilis when the defendant made the plates and inserted them in the plaintiff's mouth, that fact would be immaterial, if, as could have been found, cancer resulted from the defendant's negligence. Even if there had been no evidence that the illness from which the plaintiff suffered was caused by cancer, a verdict could not rightly have been directed for the defendant, as there was evidence of negligence of the defendant in the making and inserting the plates in the plaintiff's mouth, thereby causing much pain and suffering irrespective of the growth, for which it could have been found that he was entitled to damages. If the defendant desired to raise the question of causation, he should have presented it to the trial judge by appropriate requests for rulings.

The defendant excepted to the refusal of the trial judge to strike out the entire testimony of the physician above referred to when he was called by the plaintiff. The defendant did not object to his testifying. The trial judge evidently was satisfied that the witness was qualified to testify as an expert. It was said in *Guinan* v. *Boston Elevated Railway,* 267 Mass. 526, at page 527: "The rule is well established that whether a person called as an expert has the necessary qualifications to testify is a preliminary question to be decided by the trial judge; and his decision is conclusive, unless it appears on the evidence to have been erroneous as matter of law."

The defendant also excepted to the refusal of the trial judge to strike out that part of the testimony of the same witness so far as it related to the electronic test. We have no means of determining whether this test is of value as a means of diagnosing syphilis. The witness testified that it is so used by probably two or three thousand physicians in the United States, and that it had been in existence for about fourteen years. The testimony was not incompetent. It cannot be said as matter of law that it was of no value.

*Commonwealth* v. *Russ*, 232 Mass. 58, 72–75. *Commonwealth* v. *Reilly*, 248 Mass. 1. *Commonwealth* v. *Campopiano*, 254 Mass. 560, 563. The witness stated that he did not base his diagnosis of cancer on the electronic test alone, but that he confirmed his physical diagnosis by the test, and that he would have made the same diagnosis regardless of the test. The weight to be given to the testimony respecting the electronic test was for the jury. They may have disregarded it entirely and have given credence to the other testimony of the witness.

The defendant excepted to the refusal of the trial judge to allow him to make an offer of proof relative to his request, made during the course of the trial, for a physical examination of the plaintiff. This offer of proof was made on December 6, 1928. The trial began on November 21, and the request was made on November 23. Counsel for the defendant stated to counsel for the plaintiff that he should like a further physical examination to be made by a physician called by the defendant, and would like an answer by the following Monday. A previous examination of the plaintiff had been made on October 14, 1928. Prior to that date the plaintiff's counsel two or three times had suggested to counsel for the defendant that the defendant should examine the plaintiff forthwith because of his serious physical condition. The defendant further offered to prove that after the foregoing conference a second conference took place before the judge at which time counsel for the defendant suggested the desirability of a further examination of the plaintiff. Neither counsel made any reference to the matter thereafter. The trial judge excluded the offer of proof. The offer does not show that the plaintiff refused to be examined again by physicians at the request of the defendant. It is admitted that the defendant had been given ample opportunity to examine the plaintiff and did so on October 14, 1928, and that such examination was urged by counsel for the plaintiff. As neither counsel referred to the request for further examination after the conference at the bench, the judge and counsel for the plaintiff were justified in assuming that the request was waived or aban-

doned.   It appeared that the plaintiff was examined by a medical witness called by the defendant on three occasions, at the plaintiff's home on October 14, 1928, and during the trial both in the court room and outside, and it could have been found by the judge that the plaintiff was willing that his condition should at all times be fully known to the defendant.

A careful examination of the entire record discloses no error of law.

*Exceptions overruled.*