Zimmerman, J.
 

 Two prejudicial errors are claimed by the plaintiff, appellant herein:
 

 (1) The rendition of judgment by the trial court in favor of the defendant; and (2) the refusal of the trial court to permit one of plaintiff’s medical experts to
 
 *267
 
 answer a certain question, quoted later in the opinion.
 

 Evidence offered by the plaintiff was to the effect that on December 24, 1937, he fell and fractured the upper part of the humerus in his right arm; that soon thereafter he was taken to the Cleveland Osteopathic Hospital where he came under the professional care of the defendant; that on the same day an X-ray picture was taken, at the direction of defendant, which showed the break in the arm; that plaintiff was put to bed at the hospital and a traction device attached to the arm, known as a Thomas splint, which, according to plaintiff’s testimony, worked improperly and caused him unnecessary discomfort; and that on December 28, 1937, another X-ray picture was taken at the direction of the defendant, disclosing a juncture of the bone fragments, and on the following day the defendant applied a so-called airplane type plaster cast to the broken arm. Plaintiff testified that on December 30th, just before he was removed to his home from the hospital, defendant told him to return on January 18th, at which time the cast would be removed and tire arm placed in a sling. No further treatment of the arm was given and no fluoroscopic or X-ray examination was made until January 12, 1938, when an X-ray picture, ordered taken by defendant, showed the ends of the fractured bone out of alignment and overlapping. Additional X-ray pictures taken on January 14, 1938, at the Huron Road Hospital, when plaintiff was under the care of a Dr. Reed, showed the same overlapping condition. Dr. Reed advised plaintiff that on open operation would be necessary to secure a satisfactory union of the bone fragments.
 

 Defendant was called by plaintiff for cross-examination. After testifying that the customary manner of reducing a fracture is the same in osteopathy as in medicine, he stated that the X-ray picture taken on December 28th “showed satisfactory reduction of the fracture,” and that on December 29th he applied the
 
 *268
 
 airplane splint. This entailed raising the arm to a wing position. Plaster was used in connection-with the .splint to hold the arm “in rigid fixation.” However, defendant maintained that he made no effort to set the broken bone, because plaintiff’s “entire constitutional system was bad” and that “further treatment along other lines” would be necessary before anything more could be done with the fracture. Defendant further testified on cross-examination that he advised plaintiff’s wife on January 12th “that we were not treating him [the plaintiff] for the fracture, in bringing his arm down; that other treatment would be necessary for that, either hospitalization again, or operation.”.
 

 Plaintiff’s own testimony was to the effect that his physical condition was good at all times during his relationship with the defendant.
 

 Dr. John W. Conwell of Cleveland, a medical doctor, called as an expert witness by plaintiff, testified that he had had considerable experience in the reduction and treatment of fractured human bones; that as concerns a fractured humerus, the usual and common medical practice is to tire out the muscles surrounding the break, by placing a weighted extension on the arm for several days or until swelling has' subsided; and that then, by manipulation and with the aid of a fluoroseope or by X-ray pictures, an attempt is made to get the bone fragments end to end or in apposition, whereupon a so-called airplane splint is ordinarily applied.
 

 Dr. W. T. Hobart of Cleveland, plaintiff’s other expert witness, testified along the same line.
 

 On direct examination Dr. Conwell was asked the following questions and gave the following replies:
 

 “Q. Now from your examination of these X-rays, and your examination of this patient [the plaintiff], what would you say was the possibility of getting a meeting of these ends in this case, had they been set by this usual form of manipulation, under fluoroscope
 
 *269
 
 or X-ray? * * * A. I think you would have gotten a very good result.
 

 “Q. From your knowledge, derived from your examination of this patient and examination of the X-rays, could or could not this fracture have been set so that the ends contacted each other? * * * A. Yes, I believe they could.”
 

 Dr. Conwell asserted that plaintiff had presently only a 60 per cent normal use of his right arm, while Dr. Hobart placed the percentage at 70.
 

 Plaintiff complains that the trial court committed prejudicial error in refusing to permit Dr. Conwell to answer the following question:
 

 “Q. Now, Doctor, you have examined the X-rays that were taken at the Huron Road Hospital, and you have examined the X-rays which were taken at the Cleveland Osteopathic Hospital, and directing your attention to the X-ray, defendant’s exhibit B, taken at the Cleveland Osteopathic Hospital on December 24th [December 28th], and where the ends were partly together, and directing your attention to the X-rays that were taken at Huron Road Hospital, January 14th, plaintiff’s exhibits 2 and 3, and 6. Are you, from your experience, able to state what would be the cause of the separation of that point of contact, as shown in the first X-rays, with those shown in the last?”
 

 While as a matter of fact this was a preliminary question, the logical answer to which would have been “yes” or “no,” it was treated by all concerned as one eliciting the expression of an opinion on the cause of the separation of the bone fragments after a union had been effected as shown by the X-ray picture of December 28th.
 

 Objection to the question was sustained on the ground that it called for a conclusion — “one that the jury would have to draw, rather than the witness.” An exception was noted. “Thereupon counsel for plaintiff, out of the hearing of the jury, stated into the
 
 *270
 
 record an offer to prove that the witness, if permitted to answer, would say that in turning the arm back to a position upright with the head, that the contact of the two bones were separated, and caused them to side-slip.”
 

 The authorities are practically agreed that X-ray pictures, with the technical aspects of which the ordinary layman is not familiar, may be interpreted and explained to a jury by qualified experts. 77 A. L. ft., 949, annotation. And while non-expert witnesses are not usually permitted to express an opinion as to the cause of an occurrence involving an ultimate fact issue, experts in the particular field of inquiry may do so in certain cases.
 

 In 20 American Jurisprudence, 686, Section 817, the following statement appears:
 

 “The general rule is that opinions as to the cause of a particular occurrence or accident given by witnesses possessing peculiar skill or knowledge — that is, experts — are admissible where the subject-matter is not one of common observation or knowledge, or, in other words, where witnesses because of peculiar knowledge are competent to "reach an intelligent conclusion and inexperienced persons are likely to prove incapable of forming a correct judgment without skilled assistance.” And see, 7 Wigmore on Evidence (3 Ed.), 121, Section 1976.
 

 For a specific application of the rule in a malpractice action embracing the treatment of broken bones, attention is directed to the case of
 
 Pedigo
 
 v.
 
 Roseberry,
 
 340 Mo., 724, 102 S. W. (2d), 600, where it was held that subjects of litigation not within general experience and common knowledge require the testimony of experts in such subjects for “the establishment of the ultimate fact.”
 

 So, as we view it, the plaintiff was entitled to the benefit of Dr. Cornwell’s opinion in response to the
 
 *271
 
 quoted question as an aid in sustaining the burden imposed upon him of establishing negligence on the part of the defendant, as charged, and of showing a causal connection between such negligence and the claimed impairment of the arm. Of course, on cross-examination the accuracy and correctness of Dr. Conwell’s conclusion could be tested, and the defendant would have the right to introduce other expert testimony in contradiction.
 

 Considering plaintiff’s evidence as a whole in the light most favorable to his contention (39 Ohio Jurisprudence, 802, Section 183), excluding Dr. Conwell’s rejected testimony, it discloses a situation wherein there was a contact of the broken bone fragments on December 28th, a loss of such contact in the process of applying the airplane type splint, and no further attention whatever to the fracture by the.defendant for a period of two weeks. Coupled with this is the opinion of Dr. Conwell that the break was of such a nature that it could have been originally set with good results in the usual and ordinary way.
 

 We are therefore of the opinion that plaintiff made out a
 
 prima facie
 
 case against the defendant, requiring the latter to proceed with his evidence.
 

 There being prejudicial error in the refusal to permit Dr. Conwell to express his opinion as to the cause of the separation and also in the rendition of judgment against the plaintiff at the close of his case in chief, the judgments of the Court of Common Pleas and the Court of Appeals are reversed and the cause remanded N the trial court for further proceedings.
 

 Judgment reversed and cause remanded.
 

 Weygandt , C.~ J., Wldiams and Bettman, JJ., concur.
 

 Matthias and Hart, JJ., dissent.