the defendant herein guilty of violating Section 13044, General Code (Section 3773.24, Revised Code), is affirmed.

*Judgment affirmed.*

Hurd, P. J., and Kovachy, J., concur.

Evangelista, Appellant, *v.* Black et al., Appellees.

(No. 4724—Decided June 22, 1953.)

*Mr. George R. Effler* and *Mr. John J. Barone,* for appellant.

*Messrs. Shumaker, Loop & Kendrick,* for appellees.

DEEDS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Lucas County.

The parties will be referred to in this opinion as they stood in the trial court—the appellant as plaintiff and the appellees as defendants.

The action was for damages for alleged malpractice, and proceeded to trial on the amended petition of the plaintiff and the separate answers of the defendants.

At the conclusion of the introduction of evidence by the plaintiff, on motion of the defendants, the court directed the jury to return a verdict for the defendants. A motion for a new trial by the plaintiff was overruled and a final judgment entered by the court in favor of the defendants.

The assignments of error are that the trial court committed error in directing the jury to return a verdict for the defendants, in overruling the motion for a new trial, and in entering judgment for the defendants.

A review of the proceedings and judgment on the basis of the claimed errors will require a consideration of pertinent facts as disclosed by the record.

It appears from the evidence that on January 12, 1951, the plaintiff, Thelma Evangelista, 25 years of age, married and employed as a meat wrapper at a Kroger store, sustained serious injuries about her face, including a fracture of her lower jawbone, as the result of an automobile accident, following which she was removed to the Toledo Hospital where she remained as a patient until January 28, 1951.

At her suggestion, the defendant Dr. English was called as the attending physician to assume general charge of her treatment, after which, at the suggestion of Dr. English, the defendant Dr. Black, a member of the staff of Toledo Hospital specializing in dental and

oral surgery, was engaged on behalf of the plaintiff to treat her for the injuries to her mouth and jaw.

The defendant English first saw the plaintiff at the Toledo Hospital on January 14 after an X-ray examination of her face had been made and from his observation of the plaintiff he concluded that she was probably suffering from injuries not revealed by the first X-ray examination, which was made soon after her entrance into the hospital. He ordered that another X-ray examination be made, which was done.

The defendant Black saw and examined the plaintiff on January 12 and it appears from the testimony of the defendants that, due to a considerable amount of swelling about plaintiff's face, the defendants agreed that a reduction of the fractured bones and in particular the lower jaw should be delayed until the swollen condition of plaintiff's face had subsided, with appropriate treatment being administered in the meantime.

Dr. English saw the plaintiff each day following January 14 during her confinement in the hospital until her discharge on January 28, 1951, and Dr. Black saw her on several occasions during that time, although the defendants did not see the plaintiff together nor did they meet at any time for a conference in reference to her condition. All communications between them were made by telephone.

On January 22, the defendant English informed the defendant Black that plaintiff had sufficiently recovered from the swollen condition that a reduction of her lower jaw might be made, and on January 23 Dr. Black made the reduction and placed archbars and elastic traction bands in plaintiff's mouth for the purpose of holding the fractured bone in position. No further X-ray examination was made at the hospital following the reduction of the fracture of the lower jaw.

After being discharged from the hospital on Janu-

ary 28, plaintiff visited the office of the defendant Black for observation and adjustment of the elastic bands on four occasions during the first week and once each week during the three following weeks. Dr. Black made an X-ray examination of the plaintiff's jaw at his office on January 29, the day following her discharge from the hospital and again on February 16, and he saw her at his office on the last occasion on February 21 when she informed him that her face was crooked, including a hard projection from her chin, a buckling outward of her left cheekbone, jaw overlapping and nose pushed over to left side, which she described as being very obvious.

The defendants testified as if on cross-examination that the only fractures sustained by the plaintiff which they found from examinations by X-ray and otherwise were a fracture of the symphysis of the mandible, being to the right side of the central portion of the lower jaw, a fracture of the condyle or upper part of the lower jaw on the right side, and a fracture of a bone in her nose which extended into the sinus, also referred to as a congenital condition. It was assumed by the defendants that the latter fracture was not to be treated by them, although as we view the legal relation between physician and patient, the defendant English had a responsibility respecting the result in the overall recovery of the plaintiff from the injuries she had sustained. It was in the contemplation of the plaintiff and the defendants that when the defendants had completed their treatment, plaintiff was to be referred to a plastic surgeon for the repair of the scars on her face and, according to the testimony of the defendants, the injury to her nose.

In accordance with this understanding, following February 21, arrangements were made for the plaintiff to see Dr. John C. Kelleher, a specialist in plastic and reconstructive surgery. The plaintiff went to his

office on February 24, 1951, where she was examined by Dr. Kelleher, who found a number of abnormalities. On March 1 she was sent by Dr. Kelleher to Mercy Hospital for X-ray examination, and it was found that there was very little formation of bony union of the fractures and a general abnormal condition respecting recovery from the facial and jaw injuries was presented.

In summing up the findings of Dr. Kelleher from his examination and the records at Mercy Hospital, which were admitted in evidence by stipulation, and all of which was revealed within a few days following the termination of the treatment of plaintiff by the defendants, it appears that there were a malunited fracture of the symphysis of the mandible, malunited fracture of the left zygomatic arch, a malunited fracture of the left malar bone, a loose spicule of bone below the orbit of the left eye, discoverable by palpation or feeling with the hand, a buckling outward of the left cheek bone, poor occlusion or malocclusion of the teeth and mouth, asymmetry of the face, and a hard projection on the interior of the mouth as well as a hard projection at the chin outward, which was evidence of the overriding or overlapping fracture of the lower jaw, referred to as the mandible.

The injuries to the nose were in addition to the foregoing described results after the treatment of the plaintiff by the defendants had ended, and it was understood, according to the testimony of the defendants, that they were not expected to repair the injury to plaintiff's nose, and the defendants, at least, testified that they did not assume responsibility for the disputed fracture of the malar bone which formed a part of the zygomatic arch.

On March 2, 1951, Dr. Kelleher performed an open operation on plaintiff's lower jaw, refractured and reset that fracture and also the bones of the cheek,

and performed other work in connection with the abnormal conditions which he had found.

It should be noted that prior to seeing Dr. Kelleher, the plaintiff, in addition to calling the attention of the defendant Black to the abnormal condition of her face and mouth, also went to see the defendant English and called his attention to what she termed the crooked condition of her face, and both defendants informed plaintiff that the condition of her injuries was satisfactory.

Called as if for cross-examination by the plaintiff, the defendants testified that at the time of the termination of their treatment of the plaintiff they considered her injuries to be in a normal condition with a functional recovery, which testimony was in direct conflict with the testimony of Dr. Kelleher who testified as to the result which he found concerning plaintiff's injuries as referred to herein.

A majority of the court in their interpretation of the law as announced in decisions of the Supreme Court of the state in actions for damages for malpractice are of the opinion that the trial court erred in directing the jury to return a verdict for defendants.

The relationship existing between the physician or dentist and the patient has been defined by the Supreme Court in the case of *Bowers* v. *Santee*, 99 Ohio St., 361, 124 N. E., 238, the first paragraph of the syllabus being as follows:

"The relation of surgeon and patient is one arising out of contract, express or implied. The surgeon is not an insurer or guarantor, but does agree to exercise the average degree of skill, care and diligence exercised by members of the same profession in the given situation."

The rule of law applicable in Ohio controlling the ruling on a motion for a directed verdict at the close

of plaintiff's evidence in an action for malpractice has been announced clearly by the Supreme Court in the syllabus of the case of *Hubach, a Minor,* v. *Cole,* 133 Ohio St., 137, 12 N. E. (2d), 283, as follows:

"In a malpractice action against a physician, involving a claim of negligent treatment with injurious results, it is reversible error to arrest the evidence from the jury at the close of plaintiff's case in chief and render judgment for the defendant physician, where, viewing plaintiff's evidence in the light most favorable to her contention, she has presented a chain of circumstances and events from which an inference may reasonably arise that the physician was negligent and that such negligence was the proximate cause of an impaired physical condition."

Considerable emphasis has been placed on the necessity for medical or expert testimony on behalf of a plaintiff by counsel for the defendants in their very able and comprehensive brief, but we believe counsel have failed to give proper consideration to the testimony of the specialist, John C. Kelleher, who testified on behalf of the plaintiff, as we consider the fact that Dr. Kelleher testified to the finding of a number of abnormalities which both of the defendants either failed or neglected to find in their examinations and to other facts relating to hospital records and other matters from which reasonable inferences could be drawn.

The law in Ohio, however, as in most of the states, does not make expert testimony necessary in all cases to require the submission of a case for malpractice to a jury. The rule in Ohio is stated as follows in 31 Ohio Jurisprudence, 489, Section 247:

"Expert testimony has been held not to be essential in all cases to enable the jury to determine whether a physician, surgeon, or dentist has been guilty of malpractice, and if violation of the physician's duty to

the patient appears otherwise, the plaintiff may refrain from calling expert witnesses.''

The weight of authority in the states of the Union on the question has been stated in 41 American Jurisprudence, 240, 241, Section 129, as follows:

''And it is the accepted rule that expert testimony is not necessary for the proof of negligence in non-technical matters or those of which an ordinary person may be expected to have knowledge, or where the lack of skill or want of care is so obvious as to render expert testimony unnecessary, but that expert testimony is admissible in malpractice cases, in which the plaintiff must prove by members of the defendant's profession the standard of care or skill ordinarily used in the practice of that profession at a particular place, since they alone know such standards. Generally speaking, the same rule applies in actions for malpractice against dentists.''

In the case before the court, a majority of the court have considered that while expert testimony is not necessary in all cases, the plaintiff did produce very substantial expert testimony by her witness Dr. Kelleher. She also furnished other evidence, including the hospital records which were admitted by stipulation, which disclosed the maladjustments and abnormalities concerning which the plaintiff and her husband testified were brought to the attention of the defendants but which they either ignored or to which they neglected to give any attention.

The law applicable to the necessity for expert testimony was stated in the opinion of the Supreme Court by Judge Zimmerman in the case of *Hubach, a Minor,* v. *Cole, supra,* as follows:

''In a malpractice action, the issue as to whether the defendant physician has proceeded in the treatment of the particular case with the requisite standard of care and skill is a matter which must ordinarily be deter-

mined from the testimony of medical experts. But the statements and acts of the defendant physician, as well as external appearances and manifest conditions which are observable by anyone, may be given by non-expert witnesses. And such testimony by lay witnesses may show a course of conduct with ensuing results of such a character as to warrant the inference of want of care. 31 Ohio Jurisprudence, 489, Section 247; *Benson* v. *Dean,* 232 N. Y., 52, 56, 133 N. E., 125, 126; *DeGroot* v. *Winter,* 265 Mich., 274, 251 N. W., 425, 426; *Stockham* v. *Hall,* 145 Kan., 291, 65 P. (2d), 348, 349.

"A motion for a directed verdict or for judgment by the defendant accepts as true every fact offered in evidence by the plaintiff with the reasonable inferences deducible therefrom. The rule of evidence in establishing the facts of negligence and proximate cause is the same as applied to the determination of any other question of fact. And negligence and proximate cause become questions of law only when the evidence is such that reasonable minds cannot reasonably draw different conclusions either as to the facts or as to the deductions from the facts."

The Supreme Court announced the rule controlling the decision of the case before us in the third and fourth paragraphs of the syllabus in *Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St., 469, 189 N. E., 246, as follows:

"3. Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.

"4. Where from the evidence reasonable minds may

reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence.''

Again in the opinion of the Supreme Court by Judge Zimmerman, in the case of *Hubach, a Minor,* v. *Cole, supra,* the law applicable to the case before us was announced as follows:

''Viewing plaintiff's evidence in the light most favorable to her claim, she presented a chain of circumstances and events from which the ultimate facts of negligence and proximate cause could be reasonably inferred. Plaintiff having thus made a prima facie case, it was reversible error for the trial court to take the case from the jury and render judgment for the defendant, as was done.

''Lending support to this conclusion are the following cases: *Gunning* v. *Cooley,* 281 U. S., 90, 74 L. Ed., 720, 50 S. Ct., 231; *Hess* v. *Millsap* (Tex. Civ. App.), 72 S. W. (2d), 923; *Goddaire* v. *Sibley,* 270 Mass., 41, 46, 169 N. E., 797, 799; *Hafeman* v. *Seymer,* 195 Wis., 625, 219 N. W., 375; *Butler* v. *Rule,* 29 Ariz., 405, 242 P., 436, 33 Ariz., 460, 265 P., 757, 758.''

Finding that there was error in the ruling of the Court of Common Pleas in directing the jury to return a verdict for the defendants and in entering judgment in favor of the defendants, the judgment is reversed, and the cause is remanded to the Court of Common Pleas for a new trial.

*Judgment reversed.*

Conn, J., concurs.

Fess, J., dissenting. With regard to Dr. English, a general practitioner, there is no evidence from which an inference of negligence proximately contributing

to plaintiff's damage can be drawn, nor am I willing to concede that the negligence of a surgeon who may be recommended or whose advice may be obtained by a general practitioner may be imputed to the latter.

With regard to Dr. Black, an oral surgeon, the evidence discloses a poor result from his treatment in contrast with a favorable result of the second operation by the plastic surgeon. There is no evidence to indicate the standard of care which the defendant Black should have exercised. Cf. 162 A. L. R., 1275; *Ewing* v. *Goode*, 78 F. 442, 443.

A presumption of negligence is never indulged from the mere fact of injury, and the burden is on the plaintiff to prove the negligence of the defendant and that such negligence is a proximate cause of injury and damage. The plaintiff must show by a preponderance of the evidence that the defendant in the performance of his service either did some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would not have done under the same or similar circumstances, or that the defendant failed or omitted to do some particular thing or things which physicians and surgeons of ordinary care, skill and diligence would have done under the same or similar circumstances. *Ault* v. *Hall,* 119 Ohio St., 422, 164 N. E., 518, 60 A. L. R., 128; *Kuhn* v. *Banker,* 133 Ohio St., 304, 13 N. E. (2d), 242, 115 A. L. R., 292. In the case of *Bradshaw* v. *Wilson,* 87 Ohio App., 319, 94 N. E. (2d), 706, it was held that in the absence of evidence to support the technical proposition that the reduction of the fracture was negligently performed, the judgment would have to be affirmed. The judgment was reversed upon the ground that there was sufficient evidence of neglect of the patient without expert medical testimony upon which to draw an inference of negligence.

In *Hall* v. *Nagel,* 139 Ohio St., 265, 39 N. E. (2d), 612, there was expert testimony that the break was of such a nature that it could have been set with good results in the usual and ordinary way. By way of contrast, in the instant case there is no showing that Dr. Black failed to pursue the usual and normal procedure in the reduction of the fracture.

The judgment should be affirmed.