Lloyd V. BOXBERGER, Appellee,

v.

Dr. George A. MARTIN, Appellant.

No. 47952.

Supreme Court of Oklahoma.

June 13, 1976.

Rehearing Denied June 27, 1976.

Shears & Shears, by Jack L. Shears, Jr., Ponca City, for appellee.

Ross, Ross & McCarty, by Jack D. McCarty, Newkirk, for appellant.

HODGES, Vice Chief Justice.

This action was instituted by appellee, Lloyd V. Boxberger (patient), against appellant, Dr. George A. Martin (physician), to recover damages for personal injuries allegedly caused during a medical examination by the negligence of the physician, a licensed medical doctor and orthopedic surgeon. The patient obtained a jury verdict in the sum of $7,500.00. The physician filed motions for judgment notwithstanding the verdict and for new trial which were overruled, and from which the physician appealed.

The Court of Appeals, Division No. 1, dismissed the appeal because the appellate record failed to contain the journal entry of judgment on the motions for judgment notwithstanding the verdict and for new trial. Appellant sought to amend the record nunc pro tunc by filing the journal entry and at the same time petitioned for rehearing. Rehearing was denied, and appellant seeks certiorari. Certiorari is granted and the decision of the Court of Appeals dismissing the appeal is vacated.

The Supreme Court Rules of Appellate Civil Procedure, 12 O.S.1971, Ch. 15, App. 2, Rule 1.24(b) permits the amendment of the record nunc pro tunc.[1] Perfection of an appeal is determined by 12 O.S.1971, Ch. 15, App. 2, Rule 1.14(b) which provides in pertinent part:

"* * * On compliance with these requirements the appeal shall stand per-

---

1. Correction of a record transmitted to the Supreme Court may be amended nunc pro tunc, pursuant to 12 O.S.1971, Ch. 15, App. 2, Rule 1.24(b):

A record which has been transmitted to this court may be amended nunc pro tunc, with leave of this court, on application to the trial court. Notice of hearing the application shall be given to the opposite parties as the trial court may direct. After hearing the application, the trial court may order the record amended nunc pro tunc by adding any omitted instrument or by correcting any instrument contained in the transmitted record. The original application, notice, transcript of proceedings, if any were had, and the order amending the record, together with the original instruments ordered to be included, shall be listed and authenticated in a certificate of the clerk of the trial court and transmitted to the clerk of this court for incorporation into the record in this court. If the trial court should refuse to amend the record, the application, notice, transcript of proceedings, if any were had, and the trial court's order shall be transmitted to this court in the same manner.

fected. Any defect in taking an appeal, other than failure timely to file a petition in error with the statutory cost deposit, must be disregarded unless a substantial right of the complaining party is affected; and no such defect, if correctible, shall result in dismissal of the appeal."

Because the petition in error was timely filed, and the transcript has been corrected, we believe justice will be better served by reinstatement of the appeal to be determined on its merits.

The sole question on appeal is whether there was competent evidence to support the jury verdict that the physician broke the patient's leg.

Appellee sustained numerous fractures of the right leg as a result of motorcycle accident in February, 1972. He underwent surgery in Oklahoma City and a stainless steel plate held with sixteen screws drilled completely through the bone and Jewitt nail were attached to his femur over the fractures. His leg was also fractured below the knee and this portion of leg was placed in a plaster cast. In July, 1972, appellant, physician, a board certified orthopedic surgeon, assumed the care and treatment of the patient. On March 5, 1973, the physician surgically removed the steel plate, the sixteen screws and the Jewitt nail. On March 19, 1973, stitches were removed by the physician. The patient was released with instructions to remain on crutches for a month to be cautious with the leg. The physician recommended the patient "take it easy for about a month," that the leg would be weaker for some period and purportedly could easily break again. The patient was also advised to refrain from working at the service station which he operated.

On March 21, 1973, patient was doing "book work" at his service station in a wheelchair when an assistant asked him to look at an automobile engine. As appellee lifted himself out of his wheelchair, he moved his right ankle sharply and felt pain in the lower part of his leg. He immedi-

ately went home. The patient testified he took a bath, ate supper, and was able to walk throughout his home without experiencing additional problems. Upon awakening the next morning the leg was not hurting anymore and there was no swelling. He had almost decided not to go to the physician's office, but when he started to his car he noticed his leg was still hurting when he flexed his ankle. The pain existed between his ankle and his knee and did not hurt above the knee. He did not experience pain in the knee or above the knee prior to his visit to the physician's office to have his leg examined.

The patient also testified during examination a conversation arose as to whether patient had been working at the station in violation of physician's orders when his leg was hurt. The patient answered in the affirmative and the physician became angry and shoved patient's leg, telling him to get another doctor. Immediately the patient experienced pain in his upper leg. He further testified that although he had entered the physician's office on his own power, with aid of crutches, he had to have assistance to leave.

The next day, the patient went to the emergency room at the Ponca City Hospital where x-rays revealed a fracture of right femur in close proximity with one of the screw holes.

The patient testified specifically physician fractured his leg during examination. The physician sharply contradicted patient's testimony concerning what transpired during examination. The physician testified he was unable to complete examination because of hostility of the patient who did not want to be touched. He specifically denied shoving or otherwise injuring the patient's leg.

Dr. Houk, who treated the patient at Ponca City Hospital, testified that the patient advised him he had injured his leg while working at the service station and, in fact, felt a "snapping sensation" in his right thigh at that time. No mention was made of the incident in physician's office.

It was the patient's testimony that when he called Dr. Houk the night before, he was told Dr. Houk did not want to hear of any difficulty between patient and Dr. Martin. Dr. Houk testified he couldn't say when the break occurred, he could only take the patient's word for when it happened. Dr. Houk further testified if there was enough force exerted to fracture the leg it would not be the normal standard of medical examination and a normal medical examination should not have refractured the femur. Dr. Houk also testified when he saw the patient his leg was grossly swollen and obviously painful. He indicated when there is pain around the knee, and the knee is free from problems pathology to the hip bone may be expected. He indicated in a fracture of the sort the patient suffered, the primary area of pain should have been where the swelling was located, between the knee and the hip. He also stated the patient would have been unable to walk on his leg as fractured because of the severe pain, and that he would expect the whole leg to hurt with a fracture such as the patient had suffered.

Dr. Miller, also a board certified orthopedic surgeon and faculty member at University of Oklahoma School of Medicine, testified in his opinion an individual could not exert enough force to cause the fracture manually. He stated it would take quite a severe amount of stress to sustain the injury in question; something like a fall, or a sudden step off a curb or a twist, with application of full body weight. However, he admitted his opinion was based upon the assumption the leg was stable, healthy and well-healed. He also acknowledged that the screw holes add to the weakness of the bone, and if a physician exerted enough force in a downward motion to break the leg he would be using force in excess of that required in a normal examination.

Appellant contends trial court erred in not directing verdict for defendant at close of all the evidence. In support of this contention, he asserts expert medical testimony was required to show when the fracture occurred.

The general rule is expert testimony is ordinarily necessary to establish causation in professional liability cases.[2] However, for every rule of law there must be a rational reason. It is obvious that the trier of the fact must have sufficient technical and scientific testimony at his disposal to answer a scientific and technical question of fact. But when a physician's lack of care has been such as to require only common knowledge and experience to understand and judge it, expert medical testimony is not required to establish that care.[3] There is a limitation on the rule that expert medical testimony is essential to support a cause of action for negligence where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts.[4] Expert medical testimony is not required to establish the cause of an objective injury where there is competent evidence, without such testimony, to establish the cause with reasonable certainty.[5] The need for expert medical testimony is limited to establishing a proper standard of care physician should have followed. The jury may consider all evidence in determining whether the treat-

2. *White v. Burton*, 180 Okl. 499, 71 P.2d 694 (1937); Annot., "Necessity of expert evidence to support an action for malpractice against a physician or surgeon," 81 A.L.R.2d 597, 601 (1962). However, several jurisdictions have permitted the use of medical and scientific text books as independent substantial evidence. Kansas, Nevada and Massachusetts permit this by statute; Alabama and Wisconsin as the result of case law. See *Lewandowski v. Preferred Risk Mutual Insurance Co.*, 33 Wis. 2d 69, 146 N.W.2d 505, 509 (1966).

3. *Largess v. Tatem*, 130 Vt. 271, 291 A.2d 398, 403 (Vt.1972); *Thomas v. Corso*, 265 Md. 84, 288 A.2d 379, 387–88 (1972).

4. *Gunning v. Cooley*, 281 U.S. 90, 98, 50 S. Ct. 231, 74 L.Ed. 720, 726 (1930). *Butts v. Watts*, 290 S.W.2d 777, 779 (Ky.1956).

5. *Orthopedic Clinic v. Hanson*, 415 P.2d 991, 992 (Okl.1966); Annot., "Malpractice: treatment of fractures or dislocations," 54 A.L.R. 2d 200, 207 (1957).

ing physician failed to meet the requisite standard of care.[6]

The patient contends since the fracture he sustained in the physician's office was an objective injury it was not necessary to offer expert medical testimony relative to the cause of his injury. He asserts he felt immediate pain in the area of his right femur at the time the physician shoved his leg downward. In *Barnett v. Richardson,* 415 P.2d 987, 990 (Okl.1966) this court said:

". . . Where an injury is patent, objective rather than subjective, the plaintiff is competent to testify as to the injury, the treatment received therefor, and the reaction of such treatment, and this testimony is sufficient for the jury to render a verdict . . . and no expert medical testimony is necessary."

Appellant counters that the injury was subjective and not apparent to a layman because it was internal, and that expert testimony was required.

■ The cases do not support the theory for an injury to be objective in nature it must be external as opposed to internal.[7] The exception to the rule requiring expert medical testimony has been applied in cases of fractures where the physician's liability turns upon matters to which a layman may be a competent witness. While an expert opinion may be necessary to establish the proper standard of care, a non-expert is as competent as an expert to testify to the amount of force actually employed during treatment.[8]

■ The testimony of physicians is not the only type of evidence which may be considered by juries in determining whether a physician has been negligent. Causal connection may be proved by circumstantial evidence if the evidence has sufficient probative force to constitute the basis for a legal inference, rather than mere speculation. The circumstances proved must lead to the conclusion with reasonable certainty and probability.[9]

■ The doctrine of res ipsa loquitur is essentially a rule of circumstantial evidence where a jury in a negligence case is permitted, but not required, to draw an inference of negligence from the happening of an accident of a kind which experience has shown does not normally occur if due care is exercised. The application of the doctrine is allowed where the act is negligent within the common knowledge of a layman.[10]

6. *Douglas v. Bussabarger,* 73 Wash.2d 476, 438 P.2d 829, 833 (1968).

7. In *Edwards v. Chandler,* 308 P.2d 295, 299 (Okl.1957) this court said:
". . . If, as a result of the accident, plaintiff had completely lost the arm, or a part of it, there would be no question but that such loss would constitute an objective injury; and it has been indicated that the fracture of an arm, or member, may come within the same category." See also *Olson v. Weitz,* 37 Wash.2d 70, 221 P.2d 537 1950); *Lashley v. Koerber, M.D.,* 26 Cal. 2d 83, 156 P.2d 441 (1945); *Evangelista v. Black,* 97 Ohio App. 390, 56 Ohio Opr. 150, 126 N.E.2d 71 (1951); 54 A.L.R.2d 200, 207 "Malpractice; treatment of fractures or dislocations" (1957); 61 Am.Jur.2d Physicians & Surgeons § 203 (1972).

8. *Dameron v. Ansbro,* 39 Cal.App. 289, 178 P. 874 (1919).

9. *Martin v. Stratton,* 515 P.2d 1366, 1371 (Okl.1973).

In a malpractice action against physician charged with negligence in treating patient for fracture of the elbow resulting in ischemic paralysis of her hand, the court in *Atkins v. Humes,* 110 So.2d 663, 666, 81 A.L.R.2d 590 (Fla.1959) said: ". . . But jurors of ordinary intelligence, sense and judgment are, in many cases capable of reaching a conclusion, without the aid of expert testimony, in a malpractice case involving a charge of negligence in the application or administration of an approved medical treatment . . . Even in those cases in which some expert testimony may be required to show causation, the jurors may be authorized to infer from the circumstances that the defendant was negligent in the administration of an approved medical treatment, despite the absence of direct expert testimony to this effect and in the face of expert testimony to the contrary."

10. *Stundon v. Stadnik,* 469 P.2d 16, 22 (Wyo. 1970).

In an analogous case, *St. John's Hospital & School of Nursing v. Chapman,* 434 P.2d 160 (Okl.1967), an action was brought by the guardian of a patient whose femur was fractured when she was turned over in bed by a nurse's aid. This court held the doctrine of res ipsa loquitur to be applicable and the question of whether the evidence of the hospital was sufficient to overcome the inference of negligence under the doctrine was for the jury.

The weight to be accorded to expert testimony is for the jury, who may follow their own experiences, observations and common knowledge and may reject opinions of experts.[11]

The evidence was the patient had been told by physician to take it easy, that the leg was susceptible to refracture. An ordinary person under the circumstances could perceive that undue physical pressure could induce a break. The testimony of Dr. Houk concerning probable areas of pain after fracture, i. e., the fracture should have induced pain from the knee to the hip, not from the knee to ankle, gave a basis for the jury to determine the fracture occurred at the physician's office and not at the service station. The witnesses' testimony about patient's condition before the examination and the immediate effect upon him of the examination and the testimony as to his condition shortly afterwards, which included intense pain, suffering, and swelling of the leg constitued sufficient evidence to warrant a finding that the physician refractured his femur. The jury was entitled to accept the version of appellee and his witnesses. If his version were true, the result of treatment was negligence, and we conclude there was sufficient evidence to take the case to the jury and to sustain a verdict for appellee.

Certiorari is granted. The opinion of the Court of Appeals is vacated, and the jury verdict affirmed.

WILLIAMS, C. J., and IRWIN, LAVENDER and SIMMS, JJ., concurring.

DAVISON, J., dissenting.

BERRY and BARNES, JJ., concurring in part, dissenting in part.

---

11. *Dixon v. Outboard Marine Corp.,* 481 P.2d 151, 155 (Okl.1970).